852 A.2d 287

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Jose G. CRUZ, Appellant.**

Supreme Court of Pennsylvania.

Submitted April 23, 2003.

Decided June 22, 2004.

Kristin Luene Rice, for, Jose G. Cruz, Appellant.

Michael Anthony George, Paul T. Dean, Warren Philip Bladen, for Com. of PA, Appellee.

Before: CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## OPINION

Justice CASTILLE.

In this appeal under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq.*, the issue is whether a petitioner's alleged mental incompetence during which the statutory period for filing a PCRA petition expired may trigger the "after-discovered evidence" exception to the PCRA time-bar. *See* 42 Pa.C.S. § 9545(b)(1)(ii). We hold that mental incompetence at the relevant times, if proven, **may** satisfy the requirements of Section 9545(b)(1)(ii), in which case, the claims defaulted by operation of that incompetence may be entertained. Appellant was denied an opportunity to attempt to prove that he qualified under the exception because the courts below—which did not have the benefit of this Court's recent decision in *Commonwealth v. Haag,* 570 Pa. 289, 809 A.2d 271 (2002), *certiorari denied Haag v. Pennsylvania,* 539 U.S. 918, 123 S.Ct. 2277, 156 L.Ed.2d 136 (2003)—held that allegations regarding competency and/or mental illness are insufficient to trigger the after-discovered evidence exception. Accordingly, we vacate and remand this matter to the PCRA

court for a limited hearing where appellant will be afforded the opportunity to prove: (1) that he was and remained incompetent throughout the period during which his right to file a PCRA petition lapsed; and (2) that his current petition was timely filed within 60 days of his becoming sufficiently competent to ascertain the facts upon which his underlying claims are predicated. If appellant can succeed in making these showings, the PCRA court shall proceed to the merits of appellant's underlying claims. If appellant does not succeed, the court should confirm its dismissal order on time-bar grounds.

The factual scenario giving rise to these charges is that in the early morning hours of November 28, 1992, appellant, who was armed with a .45 caliber handgun, broke into the home of his ex-girlfriend, Rebecca Cota, in Franklin Township, Adams County, with the intention of forcibly taking her from the premises. Once inside, however, appellant shot and killed Rebecca Cota, Benjamin Cota, and Roland Dela Cruz, and injured four others, who survived their gunshot wounds. Before surrendering, appellant attempted suicide by shooting himself in the head, but he survived.

On October 13, 1994, appellant, who faced multiple charges of first degree murder and a possible death sentence, in addition to other charges, entered a negotiated, counseled plea of *nolo contendere* to three counts of second-degree murder, thus sparing him the prospect of a death sentence. At the outset of the plea hearing, the court asked appellant's trial counsel why he thought a "*nolo contendere* plea is appropriate here," and counsel replied:

[H]ad this case gone to trial ... the police would have testified that on his way to exiting the building, [appellant] suffered a gunshot wound, which apparently was ... self inflicted. [Appellant] was hospitalized down in Maryland for quite some time, and I have had him evaluated by Dr. Hostetter, a psychiatrist and medical doctor obviously and in his report Dr. Hostetter indicated to me that what happened during the shooting incident was that [appellant] actually lost part of his brain. Dr. Hostetter described it as

lobotomized and [appellant is] not able to express emotions and really discuss the facts of this case in any sort of sensible way and that's the reason that we have offered or requested to plead no contest.

N.T. 10/13/94, at 2–3.[1] Despite his representation that appellant was unable to discuss the facts of the case in a sensible way, and that this inability was the reason for the plea, defense counsel did not claim that appellant was incompetent, nor did the court inquire into competency *sua sponte.* Nor does it definitively appear from the record whether a competency evaluation was ever performed.

After conducting a waiver colloquy with appellant, the court accepted the plea, noting that: "After discussing the circumstances of [appellant's] head wound with defense counsel, the Court has determined that a plea of *nolo contendere* is appropriate and accepts it." N.T. 10/13/94, at 14–15.[2] In conformity with the plea arrangement, appellant was sentenced that same day to three consecutive terms of life imprisonment on the murder charges. Appellant was informed of his appellate rights, but did not file post-sentence motions and did not pursue a direct appeal. Accordingly, his judgment of sentence became final on November 14, 1994.[3]

Almost six years later, on July 25, 2000, appellant filed a *pro se* PCRA petition, alleging that his constitutional rights had been violated and that he had been denied the effective

1. Although there is no dispute that Dr. Hostetter evaluated appellant and prepared a report of his findings, Hostetter's report is not included in the record.

2. It is unclear whether the court's reference to its discussing the circumstances of appellant's head wound with counsel refers to a non-record discussion or counsel's statement at the outset of the plea proceeding.

3. For purposes of the PCRA, a judgment of sentence becomes final at the conclusion of direct review or at the expiration of time for seeking direct review. 42 Pa.C.S. § 9545(b)(3). The time for filing a direct appeal from a judgment of sentence, where the defendant does not file post-sentence motions, is thirty (30) days. Pa.R.Crim.P. 720(A)(3). In the instant case, the thirtieth day after sentencing was Saturday, November 12, 1994. Therefore, that day and the next, Sunday, November 13, 1994, are not included in the computation of the thirty-day time limit. 1 Pa.C.S. § 1908.

assistance of counsel at his plea proceeding. In his petition, appellant alleged the following facts in support of his claims of error:

Mental disorder, at the time of offense, due to head injury; being treated at the time I was prevailed upon and could offer no participation in my defense due to as[:]

1. Non-capacity to recognize reality[;]

2. Capacity to respond appropriately was grossly impaired[;]

3. Paranoid schizophrenic[;]

4. Extreme emotional disturbance[.]

*Pro Se* PCRA Petition, at 3. In an exhibit attached to the petition, appellant elaborated that he "was to[o] grossly impaired, that I could offer no assistance in my defense, at time of trial, with my head injuries, I was suffering from paranoid schizophrenic [sic], under medication and experiencing hallucination...." Exhibit I, at 2. Thereafter, present counsel was appointed.

On August 16, 2000, the Commonwealth moved to dismiss the petition without a hearing on the basis that it was untimely, pursuant to Section 9545(b)(1) of the PCRA, because it was filed almost six years after the judgment became final. That same day, the PCRA court issued a notice of intent to dismiss the PCRA on grounds of untimeliness.

On September 1, 2000, appellant filed a counseled response to the Commonwealth's motion to dismiss, alleging that appellant was suffering from brain damage at the time of the plea hearing due to the gunshot wound to his head. Counsel further quoted plea counsel's representations at the plea hearing concerning appellant's inability to discuss the facts of the case, as well as the court's record acknowledgement of the injury. Counsel then averred that:

6. [Appellant's] brain has been slowly recovering its normal functions. [Appellant] has only within the past six months finally returned to the level of literacy and comprehension necessary to filing his pro se P.C.R.A. petition.

7. [Appellant] asserts, therefore, that his failure to file within the one-year time limit for filing a P.C.R.A. should fall within the exception found at 42 Pa.C.S.A. § 9545(b)(1)(ii), "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence."

Response, at 2.

On November 21, 2000, the PCRA court held a pre-hearing conference on the Commonwealth's motion. PCRA counsel reiterated her argument that appellant's brain damage rendered him incapable of earlier exercising his PCRA rights and thus qualified him under the after-discovered evidence exception to the PCRA time-bar. Counsel noted that she had spoken to a psychologist who informed her that when a person "become[s] lobotomized that you lose all sense of temporal awareness ... which might explain why [appellant] didn't really have the sense of time that would be necessary to meet this sort of deadline." N.T. 11/21/00, 2–3. Counsel added that she had a copy of the psychiatrist's report which was prepared for plea counsel in 1994. Counsel characterized the report as revealing that:

[appellant] functions as a lobotomized person because of the permanent damage due to the shot. This went through the frontal portion of his brain. He says that the brain damage he has received has caused serious impairment of his judgment and that he is in a permanent lobotomized state, which has markedly altered his personality function and interferes with his abstract thinking.

*Id.* at 3. Counsel proffered that she would provide expert testimony on the effect of a lobotomy on the brain and "how it can recover," and also would offer testimony from appellant regarding his mental state "back in '93 and '94 and how through time and through the brain's ability to repair itself or compensate, he is moving forward in terms of his ability to read and comprehend." *Id.* at 3–4. The Commonwealth responded that no proof had been forwarded that appellant's brain injury affected his "ability to read or comprehend;" that the 1994 psychiatric report revealed that the part of the brain

affected by the injury was that which governed emotions; that appellant was able to interact with the interviewer; that he had been serving as an interpreter while in prison before entering his plea; and that the plea colloquy itself revealed that the plea was intelligently and voluntarily entered. *Id.* at 4–5.

The PCRA court then asked counsel what substantive claim she would pursue. Counsel replied that: "if we could get past the timeliness issue, what [appellant] would be asserting is because of his brain injury he was not able to understand the plea colloquy or participate meaningfully in his defense." *Id.* at 5. The court then suggested that claims premised upon incapacity generally do not toll operation of the time-bar and, thus, that hurdle had to be cleared "before we can decide whether or not you're entitled to introduce expert testimony about the effects of [a] gunshot wound to the brain." *Id.* at 6. Counsel responded by recognizing that her burden would be twofold, *i.e.*, first to establish the time-bar exception and then the merits of the underlying claim:

> [F]irst we would need expert testimony regarding how the brain injury would affect his ability to file a PCRA in any sort of timely manner.... [I]f we could get over the timeliness hurdle, then we would need expert testimony regarding what the brain injury would have done to his understanding of the plea colloquy.

*Id.* at 6. The court, however, reiterated that it viewed the matter of the time-bar as a predicate legal question and, under the current state of the law, mental incapacity, whatever its source (inebriation, trauma, etc.), was insufficient as a matter of law to toll the time-bar. *Id.* at 7. The court nevertheless permitted the parties to further brief the question of the time-bar.

In her brief, PCRA counsel reiterated the argument that appellant's alleged incapacity was sufficient to avoid the time-bar under the after-discovered evidence exception. Counsel argued that appellant's serious brain injury prevented him from knowing the facts upon which his substantive claim would be predicated. Counsel alleged that, as related in a

verified petition appellant filed on September 1, 2000, it was only within six months of the filing of his *pro se* PCRA petition that appellant "returned" to a level of comprehension necessary to exercise his rights under the PCRA. Until that time, counsel argued, the facts that formed the basis for appellant's substantive claims were unknown to him "in that they were not remembered or able to be applied in any meaningful way."

On February 28, 2001, the court entered an order granting the Commonwealth's motion and dismissing appellant's PCRA petition on the grounds that it was untimely and the court therefore lacked jurisdiction. In its accompanying opinion, the court posed the question as whether appellant had a right to a hearing and an opportunity to prove that his allegations were sufficient to trigger the after-discovered evidence exception to the time-bar. Slip op. at 4. The court then made a number of "observations," including that: (1) the claims of ineffective assistance of counsel recited in appellant's *pro se* PCRA petition clearly were time-barred; (2) the plea colloquy demonstrated that appellant's plea was knowing, intelligent and voluntary; (3) appellant's mental impairment (which the PCRA court described as amnesia) at the time of the plea was not such as to "preclude[ ] a trial and conviction;" (4) insanity is not a tolling factor for PCRA purposes; and (5) appellant's right to the appointment of an expert was fulfilled when a psychiatric expert was appointed before his plea, and he was not entitled to appointment of another expert to aid in the presentation of a PCRA petition. *Id.* at 5–6. The court then concluded that it lacked jurisdiction to entertain the PCRA petition.

Appellant appealed to the Superior Court, which affirmed the PCRA court's dismissal of the petition in a memorandum opinion filed on February 13, 2002. The panel rejected appellant's claim that his brain injury, and its alleged effect upon his ability to discern the facts upon which his petition was premised, qualified under the "after-discovered" evidence exception to the PCRA time-bar. The panel deemed this question to be controlled by Superior Court's previous decision in *Commonwealth v. Hoffman*, 780 A.2d 700, 703 (Pa.Super.2001)

(holding that claim of mental illness "does not fit any exception to the statute's time limits").

This Court granted further review, in part to address the effect, if any, of this Court's intervening decision in *Haag*, 570 Pa. 289, 809 A.2d 271 (2002), upon the analysis of the lower courts.

The exceptions to the PCRA time-bar set forth in Section 9545(b)(1) provide as follows:

Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1). Section 9545(b)(2) further provides that, "[a]ny petition invoking an exception provided in paragraph (1) shall be filed within 60 days of the date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2).

This Court has held that the PCRA's time restriction is constitutionally valid. *See Commonwealth v. Peterkin*, 554 Pa. 547, 722 A.2d 638, 643 (1998) ("the PCRA's time limitation upon the filing of PCRA petitions does not unreasonably or unconstitutionally limit [an appellant's] constitutional right to habeas corpus relief."). Furthermore, we have held that the PCRA time limits are jurisdictional in nature, implicating a court's very power to adjudicate a controversy. *See Common-*

*wealth v. Fahy,* 558 Pa. 313, 737 A.2d 214 (1999). Accordingly, the "period for filing a PCRA petition is not subject to the doctrine of equitable tolling;" instead, the time for filing a PCRA petition can be extended only to the extent that the PCRA permits it to be extended, *i.e.,* by operation of one of the statutorily enumerated exceptions to the PCRA time-bar. *Id.* at 222.

More recently, in *Commonwealth v. Robinson,* 575 Pa. 500, 837 A.2d 1157 (2003), we recounted this Court's rejection of "various theories devised to avoid the effects of the one-year time limitation" of the PCRA. *Id.* at 1157 (collecting cases). In *Robinson,* we reiterated the strictly jurisdictional nature of the PCRA time-bar and that "the PCRA confers no authority upon this Court to fashion *ad hoc* equitable exceptions to the PCRA time-bar in addition to those exceptions expressly delineated in the Act." *Id.* at 1161 (quoting *Commonwealth v. Eller,* 569 Pa. 622, 807 A.2d 838, 845 (2002)).

Appellant does not ask this Court to fashion a non-statutory, *ad hoc,* exception to the time-bar. Instead, his claim, properly understood, is that his averments entitled him to a hearing to attempt to show that his circumstances satisfy the existing after-discovered evidence exception to the PCRA time-bar. The question of the proper interpretation and scope of the exceptions to the PCRA time-bar is a matter of statutory interpretation. Such matters are questions of law as to which this Court's review is plenary. *E.g. Gustine Uniontown Associates, Ltd. v. Anthony Crane Rental, Inc., L.P.,* 842 A.2d 334 (Pa.2004).

The essence of appellant's claim is that his alleged mental incapacity rendered the facts upon which his substantive PCRA claims would be based unknowable to him until the point at which he became competent, and thus qualifies him for review under the PCRA's after-discovered evidence exception to the PCRA time-bar. Appellant also claims that he should be permitted to attempt to prove that he filed his *pro se* PCRA petition within sixty (60) days of the point where he became competent. Although the lower courts are correct

that there is no express exception for mental incapacity found in Section 9545(b)(1), we are satisfied that, in some circumstances, claims that were defaulted due to the PCRA petitioner's mental incompetence may qualify under the statutory after-discovered evidence exception.

Our jurisprudence in the area of the Section 9545(b)(1)(ii) exception demonstrates this Court's plain language, common-sense construction of the provision. *See Commonwealth v. Abu–Jamal*, 574 Pa. 724, 833 A.2d 719, 727 (2003) (after-discovered evidence exception did not apply where appellant alleged new evidence of trial judge's bias, in form of newly acquired affidavit of court employee, because issue of trial judge's bias had been litigated through appellant's prior PCRA petition); *Commonwealth v. Breakiron*, 566 Pa. 323, 781 A.2d 94, 99–100 (2001) (after-discovered evidence exception did not apply where appellant claimed that newly acquired affidavits from jurors showed misunderstanding of meaning of life sentence but did not demonstrate why that "fact" could not have been ascertained at time of trial by exercise of due diligence); *Commonwealth v. Gamboa–Taylor*, 562 Pa. 70, 753 A.2d 780, 785 (2000) ("conclusion that previous counsel was ineffective is not the type of after-discovered evidence encompassed by the exception."); *Commonwealth v. Yarris*, 557 Pa. 12, 731 A.2d 581, 589–91 (1999) (after-discovered evidence exception not satisfied where appellant failed to demonstrate when alleged after-discovered evidence was actually discovered or why it could not have been ascertained through exercise of due diligence).

In support of his argument that claims defaulted through the PCRA petitioner's mental incompetence may trigger the after-discovered evidence exception, appellant relies primarily upon a footnote in this Court's recent opinion in *Haag*, 570 Pa. 289, 809 A.2d 271. Haag was convicted of first-degree murder and kidnapping in February of 1986 and subsequently sentenced to death. On direct appeal, this Court affirmed the conviction and death sentence. During the pendency of the direct appeal, Haag's trial/appellate counsel died, and all files relating to the case were destroyed. In March of 1991, the

superintendent of the state correctional facility at which Haag was incarcerated filed a petition with the trial court to have him involuntarily committed in order to treat him for mental illness pursuant to the Mental Health Procedures Act. *See* 50 P.S. §§ 7301, 7401. Although the trial court found evidence that Haag indeed was mentally ill, the petition was denied because the court concluded that the superintendent had failed to demonstrate that Haag was a danger to himself or others, as is required for involuntary treatment orders under the Act. Thereafter, the Department of Corrections continued to monitor Haag's mental state. From 1991 to 1994, Haag's health records from the facility reflected a consulting psychiatrist's repeated diagnosis that Haag suffered from psychosis, paranoid schizophrenia, delusions, and Capgras' Syndrome.[4]

On November 28, 1995, Haag's new counsel timely filed a PCRA petition on his behalf, alleging that he was incompetent to pursue collateral relief himself and seeking the appointment of Haag's mother as next friend. At hearings in April and May of 1997, a court-ordered, impartial psychiatric expert agreed with the opinions of the defense psychologist that Haag was not able to assist his PCRA counsel in post-conviction litigation due to an inability to rationally understand his present situation and to discuss relevant facts or even respond to the most basic inquiries posed by counsel. Both doctors also opined that Haag was not competent to knowingly and intelligently waive his right to file a collateral attack of his conviction and sentence.

On January 29, 1999, the PCRA court ordered the next friend to proceed with her petition on behalf of Haag. The next friend, in turn, petitioned the court to declare her remedies inadequate to protect Haag's right to challenge his conviction and sentence and therefore to stay the PCRA proceedings until, if and when, Haag regained competence. Following another hearing at which the defense expert again opined that Haag was incompetent and that his condition had not changed since the 1997 hearings, the PCRA court denied the motion to

---

4. People suffering from Capgras' Syndrome believe that important people in their lives have been replaced by exact clones.

stay the proceedings and declined to declare Haag incompetent to proceed with collateral review. The court concluded that such a determination was unnecessary where a next friend had been appointed and had commenced PCRA proceedings on behalf of the defendant-prisoner. Thus, the PCRA court again ordered the next friend to proceed with the petition. On appeal, this Court affirmed, reasoning as follows:

> [I]t is indisputable that Haag is incompetent to waive his right to PCRA relief and that [a]ppellant has standing as next friend to pursue such relief for him. Appellant seeks to suspend PCRA proceedings because Haag cannot aid her and PCRA counsel in an investigation of possible avenues for relief. It appears that, in any situation where a next friend initiates PCRA proceedings, the prisoner will be unwilling or unable to assist in identifying issues to raise on collateral review. A prisoner's inability to participate in next friend proceedings due to incompetence is not a reason to halt such proceedings. Requiring a next friend to pursue relief while a prisoner is incompetent ensures that the prisoner promptly reaps the benefits from meritorious claims, rather than suffering delay in relief. . . . We instruct [a]ppellant to proceed on her petition, and if Haag regains competency, he may seek review of any such claims through a second PCRA petition.

*Haag,* 809 A.2d at 280 (citation omitted).

Appellant contends that the footnote immediately following this holding in *Haag,* which concerns the availability of further review for claims that could not then be raised due to Haag's incompetence, supports his proposition that he may be able to satisfy the after-discovered evidence exception to the PCRA time-bar:

> A possible scenario may occur in the future. Haag may regain his competence after his next friend and counsel have litigated claims through a PCRA petition. The next friend may be unsuccessful in obtaining relief; and now that he is competent, Haag may wish to raise cognizable PCRA claims of which only he knew and, because of his incompetence, was unable to communicate to his next friend or counsel.

While Appellant [the next friend] asserts that Haag will be time barred from bringing a second petition and raising this class of claims, we disagree. . . .

If Haag files a second petition, that petition would be subject to the requirements for timely filing as found in the current provisions of the PCRA. . . . Because Haag's second petition cannot possibly be filed within one year of the date upon which judgment became final, his second petition will be time barred unless one of three statutory exceptions applies. . . .

Although we have not addressed the issue, arguably, the exception found in 42 Pa.C.S. § 9545(b)(1)(ii) seems to apply to the present facts. . . . In this case . . . Haag's inability to communicate with counsel because of mental illness, the death of prior counsel, and the destruction of Haag's file could satisfy the exception in section 9545(b)(1)(ii) for claims based upon facts not discovered by PCRA counsel through the exercise of due diligence. If Haag filed his second petition within 60 days of regaining his competence, and thereby, his ability to "know" such facts, Haag's second petition would not be time barred [pursuant to 42 Pa.C.S. § 9545(b)(2)].

As this issue is not ripe, and may never be, we must leave it for another day. Under our understanding of the current PCRA, which the General Assembly may change before we ever have the opportunity to address this matter, Haag would have the opportunity to seek review of claims otherwise available under the PCRA, but unraisable in his first petition due to his incompetence.

*Id.,* at 280 n. 11 (citations omitted).[5]

In a cogent and able argument, appellant's counsel in the case *sub judice* argues that footnote 11 in *Haag* opens the window to possible PCRA review for claims which appellant

---

**5.** This author filed a Concurring Opinion in *Haag,* expressing disagreement with the Majority Opinion's interpretation of the application of the after-discovered evidence exception to the "futuristic scenario" described. I made essentially three points: first, that anything we might say about the availability of future review was "necessarily both speculative and ephemeral" for a variety of reasons including that, if and when Haag returned to competence and sought further review, the

may have defaulted only because of his incompetence. There is merit in this argument. To be sure, there are distinctions between appellant's situation and Haag's. Haag (through the intercession of a next friend) was able to timely invoke the jurisdiction of the PCRA court, where appellant has not. Also, in the context of that timely filing, it was established that Haag was actually incompetent: that fact has not yet been established by appellant and he may never prove it. Also problematic for appellant is that the footnote in *Haag*, which is central to his argument, arguably was *dicta* because the scenario it described was not then before the Court. *Id.*, at 280 n. 11 ("[a]s this issue is not ripe ... we must leave it for another day.") We do not overemphasize this last point, however, because a fair reading of *Haag* leaves no doubt that the prospect of future review described in the footnote was central to a majority of this Court in deeming the next-friend procedure to be a fair and adequate method of preserving the rights of an incompetent PCRA petitioner. *See id.* at 288 (Castille, J., concurring) (noting that *Haag* majority "cites the putative availability of PCRA review in the future as one reason to reject appellant's due process claim, thereby suggesting that it has not entirely left the matter for another day.").

■ We appreciate that counsel here does not overstate appellant's case. It is undisputed that appellant suffered a

governing law might be different; second, that Haag might not qualify under the terms of the exception as then drafted since the facts underlying his defaulted claims might be deemed known to him, if not to counsel; and third that, in light of the PCRA's requirement that petitions alleging after-discovered evidence be filed within sixty days, Haag "might find himself unable to negotiate this narrow avenue of review as a practical matter." *Id.* at 288–89 (Castille, J., concurring). I went on to suggest another possible avenue for review of claims that Haag was prevented from raising due to his incompetence. *Id.* at 289–90. Although I continue to adhere to these views, I recognize that they were not accepted by a majority of the *Haag* Court. Moreover, although certain of the practical difficulties I outlined in my concurrence no doubt will be a challenge to appellant upon remand (such as the 60-day deadline), others have been removed. Specifically, this case possesses a concreteness and immediacy that *Haag* lacked on the question of the after-discovered evidence exception: *i.e.*, it does not involve a speculative future scenario, and the governing law is known.

self-inflicted and severe brain injury prior to entry of his plea and was still suffering some effect from that injury. Although that fact does not automatically prove that appellant was incompetent or establish the persistence of the alleged incompetence, it does militate against any concern that this belated claim of incompetence is fraudulent. Moreover, appellant's counsel accurately notes that there is record evidence from the *nolo contendere* hearing that suggests a basis for deeming appellant incompetent at the very time he entered his plea: *i.e.*, plea counsel's statement that appellant was "lobotomized" and "not able to ... really discuss the facts of this case in any sort of sensible way."

On the other hand, it appears that no challenge to appellant's competency was raised at or before the plea proceeding. Moreover, counsel acknowledges that here, unlike *Haag*, there is no additional information of record—such as psychiatric records, reports, or testimony—which would establish that appellant in fact was incompetent at the relevant times and that his incompetence, in turn, rendered him unable to discover the facts that would form the basis of his substantive PCRA claims. Indeed, as counsel notes:

> Unlike *Haag*, there is very little information before the Court in this case in terms of psychiatric reports and other mental health records. There has not been a determination that Appellant is incompetent; nor has there been a determination that Appellant regained competency. But it is indisputable that Appellant sustained a serious injury to the brain, that being "lobotomized" impairs cerebral functioning, and that healing takes time.

Appellant's Brief at 13. In addition, there currently is no record basis upon which we may definitively determine if and when appellant passed from incompetence to competence, if such is what happened, and thus, whether his *pro se* petition was timely filed within 60 days of his becoming competent.

We are aware of the Commonwealth's argument that, on the current state of the record and pleadings, appellant has failed to prove that he was in fact incompetent (as opposed to merely suffering some lesser degree of mental impairment) at the

pertinent times, that this incompetence prevented him from learning the factual bases of his claims, and that he acted within the narrow sixty day period afforded by the statute once he became competent. But, we cannot lose sight of the fact that the courts below, which were called upon to act before this Court decided *Haag*, deemed appellant's claim respecting appellant's incapacity to be insufficient as a matter of law to trigger the after-discovered evidence exception, and appellant therefore was not afforded an opportunity to prove that he qualified under the exception.

We do not speculate on the likelihood that appellant can prove that he was incompetent at the relevant times, that his incompetence rendered him unable to discover the factual bases for the collateral claims he would raise, and that he acted in a timely fashion once he became competent. Nor do we speculate as to the cognizability of any substantive claims that appellant would bring if he succeeds in proving that he satisfies the elements of the after-discovered evidence exception.[6] However, we agree with appellant that, in light of the language of the exception, the unique nature of claims sounding in incompetence, and this Court's discussion in *Haag*, he should be afforded an opportunity to attempt to prove that he was incompetent at the relevant times and that that incompetence qualifies under the after-discovered evidence exception to the PCRA time-bar.[7]

6. Presumably, appellant's substantive claims will be confined to the validity of his plea, given his alleged incompetence, and counsel's alleged ineffectiveness in arranging and permitting the plea of an incompetent client.

7. Our holding today is consistent with our decision in *Gamboa–Taylor*, 562 Pa. 70, 753 A.2d 780. *Gamboa–Taylor* involved a serial petition under the PCRA filed by new counsel, alleging that counsel's "discovery" that previous counsel were ineffective was a "fact" that qualified under the after-discovered exception to the time-bar. We rejected the claim, holding that "subsequent counsel's review of previous counsel's representation and a conclusion that previous counsel was ineffective is not a newly discovered 'fact' entitling Appellant to the benefit of the exception." *Id.* at 785.

The defendant in *Gamboa–Taylor* also claimed that serial PCRA counsel had uncovered additional, previously unknown facts respecting whether, at the time of trial, the defendant was "mentally fit" to direct his

For the foregoing reasons, we vacate the order of the Superior Court and remand this matter to the PCRA court for proceedings consistent with this Opinion. Jurisdiction is relinquished.

Justice NIGRO files a concurring opinion.

Justice NIGRO concurring.

Despite the fact that I joined the dissent in *Commonwealth v. Haag*, 570 Pa. 289, 809 A.2d 271 (2002), I am able to join in the result reached by the majority in the instant matter. As the majority here notes, the majority in *Haag* held that the PCRA court did not err in requiring the next friend of an incompetent PCRA petitioner to proceed with the PCRA petition filed on his behalf, pointing out that the petitioner could always seek review of any previously undiscoverable fact-based claims through a second PCRA petition if he later regained his competency. The appellant, also the appointed next friend, in *Haag*, however, argued that such a procedure

trial counsel not to present mitigation evidence at the penalty phase. The question of Gamboa–Taylor's competence to stand trial and his understanding of the consequences of his decision not to present mitigation evidence had already been litigated on his first PCRA petition. *Id.* According to Gamboa–Taylor's proffer on his second PCRA petition, he now had new evidence to attack those findings: two medical experts who had examined him prior to trial would have changed their opinions on the question of his mental fitness if they had been aware of the new information; and two other experts, who had not examined Gamboa–Taylor before, likewise would have opined that he was unfit to waive his right to present mitigation evidence. This Court rejected the argument that these additional "facts" concerning the already-litigated issue of Gamboa–Taylor's mental state at the time of trial qualified as after-discovered evidence. In this regard, we noted that all of the facts respecting Gamboa–Taylor's mental state were ascertainable in the exercise of due diligence. *Id.* at 786–87.

*Gamboa–Taylor* is distinguishable from the scenario discussed in *Haag* and now before this Court. The question of mental fitness in *Gamboa–Taylor* was presented only as the substantive, underlying question the defendant was seeking to litigate (or relitigate), via his alleged new evidence. Here, in contrast, the question of appellant's incompetence (a question not previously litigated) is offered, at least in the posture in which we now consider the case, as the very basis for his invoking the after-discovered evidence exception.

would not adequately protect the rights of the incompetent PCRA petitioner as any second PCRA petition would be time-barred by the PCRA. In addressing that claim in a footnote, the majority suggested that, although this Court had not yet addressed the issue and could not do so in the case at hand due to its lack of ripeness, a PCRA petitioner who regains competency would "arguably" be able to file a second PCRA petition pursuant to the "after discovered evidence" exception to the timeliness requirements found at 42 Pa.C.S. § 9545(b)(1)(ii). *Id.* at 280 n. 11.

The dissenting opinion authored by then-Chief Justice Zappala, which I joined, took issue with the majority's decision to force a next friend to proceed with a PCRA petition on behalf of an incompetent PCRA petitioner based, at least in part, on a prediction that the after discovered evidence exception would indeed later be found to encompass all potential claims brought by the petitioner should he regain his competence.[1] In fact, the dissent opined that this exception would *not* include "all potential cognizable claims which are presently unidentifiable by the next friend or PCRA counsel due to the inability of PCRA counsel to engage in meaningful consultation with [the incompetent PCRA petitioner] regarding his case, but would be capable of identification and development should [the PCRA petitioner] regain his competence and be able to consult with PCRA counsel." *Haag,* 809 A.2d at 292 (C.J., Zappala, dissenting). In support of its position, the dissent pointed out that this Court had already established

---

[1]. The dissent in *Haag* also faulted the majority for insisting that the issue regarding the after discovered evidence exception was not properly before the Court, and yet proceeding to *hold* that "should Haag regain his competence, any fact-based claims which can be identified through subsequent meaningful consultation with PCRA counsel can be presented in a second PCRA petition" under that exception. *Haag,* 809 A.2d at 292 n. 3 (Zappala, C.J., dissenting). Despite this apparent inconsistency, the majority in *Haag* nonetheless explicitly stated, as noted above, that the issue had not been decided by the Court and was not properly before it then and thus, in the end, the majority did indeed rest the rights of an incompetent PCRA petitioner on the mere *possibility* that he *may* later be able to bring cognizable claims pursuant to the after discovered evidence exception.

that "the class of claims which fall under the exception is extremely limited," *Id.* (citing *Commonwealth v. Gamboa-Taylor*, 562 Pa. 70, 753 A.2d 780, 785 (2000)), and further observed that the Superior Court, as the highest appellate court that had thus far addressed the issue, had actually held that an appellant's claim of mental illness did *not* fit into any exception to the PCRA timeliness requirements.

I continue to believe that *Haag* was wrongly decided. However, the issue in that case centered on whether a PCRA petitioner, through a next friend, could be forced to proceed with his first PCRA petition while incompetent. The issue of whether such incompetence may later satisfy the requirements of the after discovered evidence exception to the PCRA time limits was not, as the *Haag* majority itself stated, properly before the Court in *Haag*. Now that the issue is squarely before us, I agree with the majority that, for the reasons outlined in its opinion, this exception is applicable if a petitioner can demonstrate that he was and remained incompetent throughout the period during which his right to file a PCRA petition lapsed and that he filed his current petition within 60 days of regaining competence.