J-A28044-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANTOINE CLAYTON WILLIAMS, | : | |
| | : | |
| Appellant | : | No. 923 MDA 2018 |

Appeal from the PCRA Order Entered May 24, 2018
in the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0002818-1989

BEFORE: LAZARUS, J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:          **FILED FEBRUARY 01, 2019**

Antoine Clayton Williams ("Williams"), *pro se*, appeals from the Order dismissing his third Petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA"). **See** 42 Pa.C.S.A. §§ 9541-9546. We affirm.

Our Pennsylvania Supreme Court previously set forth the facts underlying Williams's convictions as follows:

> On … September 17, 1989, at approximately 2:55 a.m., Reading police officers were summoned to the 400 block of Gilson Alley in Reading, Pennsylvania, to investigate a report of an injured woman. Upon their arrival, Officer [Mark G.] Hafner [("Officer Hafner")] was met by [Williams] and his father, Albert Norman. They took Officer Hafner to a place in the alley where a partially clothed woman was lying facedown next to two garbage trucks owned by [Williams's] father. The officer saw a substantial amount of blood in the cab of one of the garbage trucks and a trail of blood could be detected from the truck to the body. Blood was also found on the doorway of the cab and in the seat area. The victim, twenty-three[-]year[-]old Jacqueline Lugo ["(Lugo")], was found with her panties pulled down around her thighs, her shirt pulled up under her arms and her bra ripped in the front. Both her eyes had been beaten closed and she had sustained at least five other blows to the face. Her neck showed signs of being

choked[,] and a stab wound to her neck pierced through to her throat and tongue. Numerous stab wounds were found on her torso and dirt and stones were found inside her panties.

Dr. Neil A. Hoffman, a forensic pathologist, who was also at the crime scene, observed the body and later determined that the cause of death was a stab wound through the heart. Similar stab wounds were detected on the left side of the victim's neck, in the middle of her chest and in her abdomen near her navel[.] [P]olice eventually retrieved a broken knife blade and another knife from the crime area[,] which could have easily made the types of stab wounds observed on the victim's body.

Officer Albert D. Shade, Jr., who was dispatched to the crime scene with Officer Hafner, also found a yellow shirt stained with blood in a wooded area near the body. This shirt was later identified as having been worn by [Williams] on the day of the murder[,] and another witness was able to testify that [Williams] was wearing the shirt just prior to the murder. When the officers arrived at Gilson Alley, [Williams] was wearing a jacket without a shirt and his hands and forehead were covered in blood[,] as was the inside of his jacket. Blood was also found on the inside of [Williams's] waistband and underwear, suggesting that they got stained with blood when [Williams's] pant[]s zipper was open and his pants [were] down.

There was evidence that yellow fibers were found in the victim's bra and panties and that these fibers originated from the bloody yellow shirt worn by [Williams] on the night of the murder[.] [Further,] a fiber consistent with the victim's clothing was found in [Williams's] boxer shorts. Evidence was also introduced that pubic hairs with the same microscopic characteristics as that of the victim were recovered from [Williams's person].

The blood found on the inner lining of [Williams's] jacket was the same blood type as that of the victim[,] and expert testimony established that a blood stain on the yellow shirt was consistent with having been produced by wiping blood from a blood-bearing object or instrument, like a knife. In addition to this blood stain, there were other blood stains on [Williams's] jacket[,] and on the yellow shirt[,] that were caused by "spatter stains." These stains consisted of small blood droplets aligned in a distinct pattern[,] and [they] were created when a blood source was punctured. The small pinpoint droplets found in [Williams's]

jacket indicated that they were caused by a puncture wound made with great force.

**Commonwealth v. Williams**, 650 A.2d 420, 424-25 (Pa. 1994) (hereinafter referred to as "**Williams I**").

Relevant to the instant appeal, prior to trial, the trial court directed Larry A. Rotenberg, M.D. ("Dr. Rotenberg"), to conduct a psychiatric/psychological examination of Williams. Dr. Rotenberg opined that although Williams did have "mild" mental retardation (with an IQ below 70), and personality disorder–not otherwise specified, Williams was nonetheless competent to stand trial, understand the nature of the proceedings, and participate in his defense. **See** Letter, 3/19/90, at 1 (unnumbered).

In January 1991, a jury convicted Williams of first-degree murder and related offenses. The jury imposed a sentence of death, after which Williams filed a direct appeal.

Our Supreme Court in **Williams I** analyzed, *inter alia*, the sufficiency of the evidence supporting Williams's first-degree murder conviction. The Court concluded that the evidence was sufficient, stating as follows:

> Taking all of [the above-mentioned facts] together, a jury could conclude beyond a reasonable doubt that [] Lugo's death was a homicide. From the nature of the injuries to her body, a jury could infer that the homicide was intentional, malicious and premeditated. Finally, the jury could conclude from the types of blood stains on [Williams's] garments[,] and the bloody yellow shirt that he was seen wearing during the day and prior to the murder[,] that [Williams] committed the crime.

***Williams I***, 650 A.2d at 425.[1]  Though the Supreme Court affirmed Williams's

murder conviction, it vacated the sentence of death[2] and remanded for a new

sentencing hearing.  ***See id.*** at 428-30.

On December 21, 1995, the trial court resentenced Williams to life in

prison without the possibility of parole.[3]  Williams did not file a direct appeal

following resentencing.

Williams filed a first PCRA Petition in October 1996, which the PCRA

court denied following a hearing.  Williams appealed to this Court, which

dismissed the appeal for his failure to file a brief.

In August 2004, Williams filed a *pro se* Motion for post-conviction DNA

testing, which the trial court denied.  This Court dismissed Williams's *pro se*

appeal from this ruling for his failure to file a brief.

Williams filed the instant *pro se* PCRA Petition on March 28, 2017.

Therein, he asserted that he had discovered new information that called into

question the validity of his convictions and the evidence against him.

_____

[1] Notably to the instant appeal, the ***Williams I*** Court did not mention the evidence of the microscopic pubic hair comparison analysis in rejecting Williams's sufficiency challenge.

[2] The Court vacated the death sentence because the Commonwealth, in violation of Pa.R.Crim.P. 352, had failed to notify Williams at the arraignment that his prior convictions would be submitted at the sentencing hearing.  ***See Williams I***, 650 A.2d at 429-30.

[3] Prior to resentencing, the trial court ordered Williams to undergo another psychiatric/psychological examination (hereinafter, "the 1995 mental exam"), which revealed that he was mildly mentally retarded, and his current mental state was "almost psychotic."  N.T. (resentencing), 12/21/95, at 13.

Specifically, Williams attached to his Petition an Affidavit (the "Affidavit") purportedly executed by one of his fellow inmates, Darren Johnson ("Johnson"). *See* PCRA Petition, 3/28/17, Exhibit 1. Therein, Johnson asserted that Williams had approached him, on or around February 4, 2017, and asked Johnson to prepare an "Innocence Project" application on behalf of Williams. *Id.* According to Johnson, while he was completing this application, he discovered, in Williams's prison "record center box," a July 25, 2014 letter (hereinafter "the 2014 Letter"). *Id.* The 2014 Letter, which Williams attached as an exhibit to his Petition, was issued by the U.S. Department of Justice ("DOJ") and sent to the Berks County District Attorneys' Office,[4] which had prosecuted Williams's case. *See* PCRA Petition, 3/28/17, Exhibit 2. The 2014 Letter concerned a DOJ/Federal Bureau of Investigation ("FBI") review of certain evidence presented at Williams's trial. *Id.* In sum, the 2014 Letter stated that the microscopic hair analysis testimony (and/or laboratory report) presented at Williams's trial included statements that exceeded the limits of science, and was invalid. *Id.* at pages 1-2. Finally, Williams also asserted in the PCRA Petition that his prior counsels were ineffective for failing to challenge the "faulty and misleading" expert trial testimony in this regard.

On April 11, 2018, the PCRA court issued a Pa.R.Crim.P. 907 Notice, announcing its intent to dismiss Williams's Petition without a hearing, and

---

[4] Additionally, the 2014 Letter stated that its contents would be made known to the defense, the "Innocence Project," as well as the National Association of Criminal Defense Lawyers. *See* PCRA Petition, 3/28/17, Exhibit 2, at page 3.

explaining its reasoning. Williams filed a *pro se* "Amended PCRA Petition" in response to the Rule 907 Notice. Therein, Williams urged the PCRA court to (1) grant him an evidentiary hearing on his claim of newly-discovered evidence; (2) appoint him counsel to assist him with his claim; and (3) conduct a hearing concerning Williams's competency, in light of his low IQ and mental state.

By an Order entered on May 24, 2018, the PCRA court dismissed Williams's PCRA Petition as untimely. Williams timely filed a *pro se* Notice of appeal. In response, the PCRA court ordered Williams to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and Williams timely complied. The PCRA court then issued a Rule 1925(a) Opinion.

On appeal, Williams presents the following questions for our review:

  A. Whether the lower court committed reversible error and violated the [Pennsylvania] Supreme Court's ruling rendered in **Commonwealth**[]**v.**[] **Cruz**, [852 A.2d 288 (Pa. 2004),] … and right to due process when it denied the mentally retarded, low IQ, totally illiterate and unable to comprehend [Williams] of [*sic*] a competent hearing[,] and ruling on his two separately[-]filed Motions for appointment of counsel prior to dismissing [Williams's] PCRA Petition "based upon previously unknown information" that was newly[-]discovered when the … []DOJ[] presented [Williams] with a letter informing him that the hair analysis scientific evidence presented at his trial by the FBI crime lab was faulty and inaccurate?

  B. Whether the case must be remanded to the lower court for a competency hearing and ruling on [Williams's] two separately[-]filed Motions for appointment of counsel – in addition to a third filed with his timely[-]filed [N]otice of appeal to this Honorable Court – under the Supreme Court's ruling rendered in **Cruz**, **supra** …, [and] the Due Process and

Equal Protection of the law Clauses of the United States Constitution, Amendment Fourteen?

Brief for Appellant at v (some capitalization omitted).

"Our standard of review for issues arising from the denial of PCRA relief is well-settled.  We must determine whether the PCRA court's ruling is supported by the record and free of legal error." **Commonwealth v. Spotz**, 171 A.3d 675, 678 (Pa. 2017).

All PCRA petitions, including a second or subsequent petition, must be filed within one year of the date that the petitioner's judgment of sentence becomes final.  42 Pa.C.S.A. § 9545(b)(1); **see also Commonwealth v. Chester**, 895 A.2d 520, 522 (Pa. 2006) (citation omitted) (stating that "[i]f a PCRA petition is untimely, neither this Court nor the [PCRA] court has jurisdiction over the petition.").  Any PCRA petition that is not filed within one year of the date the judgment becomes final is time-barred, unless the petitioner has pled and proven one of the three exceptions to the PCRA's time limitation set forth in 42 Pa.C.S.A. § 9545(b)(1)(i-iii) (providing that an untimely PCRA petition may be considered timely if a petitioner alleges and proves (1) governmental interference with the presentation of his claims; (2) discovery of previously unknown facts which could not have been discovered with due diligence; or (3) a newly-recognized constitutional right given retroactive application).  Importantly, any PCRA petition invoking one of these exceptions "**shall** be filed within 60 days of the date the claim could have been presented."  **Id.** § 9545(b)(2) (emphasis added); **see also Commonwealth**

*v. Fahy*, 737 A.2d 214, 219 (Pa. 1999) (emphasizing that the 60-day time period is mandatory and jurisdictional in nature). Finally, this Court has explained that "[t]he PCRA confers no authority upon this Court to fashion *ad hoc* equitable exceptions to the PCRA time-bar. This is to accord finality to the collateral review process." *Commonwealth v. Medina*, 92 A.3d 1210, 1215 (Pa. Super. 2014) (*en banc*) (citations, quotation marks and brackets omitted).

Williams's instant PCRA Petition, filed in March 2017, is facially untimely because his judgment of sentence became final approximately twenty years prior. Accordingly, the Petition is time-barred unless Williams has pled and proven a timeliness exception, **and** invoked such exception(s) within 60 days.

Williams contends that he met the requirements of the newly-discovered facts exception,[5] citing his discovery of the 2014 Letter, and invokes our

---

[5] This Court has explained that

> [t]he timeliness exception set forth in Section 9545(b)(1)(ii) requires a petitioner to demonstrate he did not know the facts upon which he based his petition and could not have learned those facts earlier by the exercise of due diligence. Due diligence demands that the petitioner take reasonable steps to protect his own interests. A petitioner must explain why he could not have learned the new fact(s) earlier with the exercise of due diligence. This rule is strictly enforced. Additionally, the focus of this exception is on the newly discovered facts, not on a newly discovered or newly willing source for previously known facts.

*Commonwealth v. Brown*, 111 A.3d 171, 176 (Pa. Super. 2015) (citations and quotation marks omitted).

Supreme Court's decision in *Cruz*, 852 A.2d 287 (discussed below), in asserting that his mental incompetence excuses his failure to timely invoke this exception.[6]  *See* Brief for Appellant at 9-13.  Additionally, Williams argues that the PCRA court erred in denying his requests for the appointment of PCRA counsel and an evidentiary hearing on his competency and claim of newly-discovered facts.  *See id.* at 18-20.

Concerning the timeliness of Williams's invocation of the newly-discovered facts exception, the PCRA court stated in its Rule 907 Notice as follows:

> [Williams] alleges that counsel was ineffective and also claims that misleading expert testimony was presented at trial.  Specifically, [Williams points to] Johnson['s discovery of the 2014 Letter, and the DOJ's determination that] … the microscopic hair analysis testimony or laboratory report presented in [Williams's] trial exceeded the limits of science and was invalid.  A review of the transcript reveals that Special Agent Paul Bennett of the FBI testified at trial concerning this topic. (N.T. Trial, 1/17/91–1/18/91, at 388-443).  However, because this claim was not raised within sixty days of the date that [Williams] received the [2014 L]etter, [*see* 42 Pa.C.S.A. § 9545(b)(2),[7]] it fails to meet an exception to the PCRA time bar.

---

[6] Specifically, Williams emphasizes that his IQ is below 70, and points out the above-mentioned comments made by the resentencing judge as to Williams's mental state.  Brief for Appellant at 11.

[7] Williams did not file his PCRA Petition relying upon the 2014 Letter (dated July 25, 2014) until 2½ years after the date on the 2014 Letter.  Moreover, though Williams filed his PCRA Petition within 60 days of the date that Johnson stated, in the Affidavit, that he had purportedly discovered the 2014 Letter and brought it to Williams's attention (*i.e.*, on or about February 4, 2017), the 2014 Letter expressly stated that it had been sent to the defense in 2014, and it was undisputedly in Williams's possession.  *See* PCRA Petition, 3/28/17, Exhibit 2, at page 3.

Order and Notice of Intent to Dismiss, 4/11/18, at 4 (footnote added). We agree with the PCRA court's rationale and determination.

Moreover, Williams's reliance on **Cruz**, **supra**, is unavailing. **Cruz** held that, *when proven*, mental incompetence "*may* satisfy the requirements" of the newly-discovered facts exception. **Cruz**, 852 A.2d at 288 (emphasis in original). In **Cruz**, the PCRA petitioner suffered brain damage from a self-inflicted gunshot wound. This Court has previously summarized the **Cruz** Court's holding as follows:

> The petitioner entered a plea of *nolo contendere*, because according to his defense counsel he could not "discuss the facts of [his] case in any sort of sensible way," as a result of the injuries resulting from his suicide attempt. Despite the petitioner's condition, defense counsel did not claim incompetence, and no determination regarding the petitioner's competency was made. After nearly six years had passed, the petitioner filed a *pro se* PCRA petition, essentially alleging that he had only recently recovered from his self-inflicted gunshot wound to the degree of mental competency required to know and understand the facts of his case. Therefore, the petitioner argued that he could submit his first PCRA petition only recently. The [PCRA] court held, and the Superior Court affirmed, that the petitioner's case did not qualify under the after-discovered evidence exception to the time bar of the PCRA.
>
> On appeal, the Supreme Court noted that there had not been any determination that the petitioner was incompetent or that he regained competency. Additionally, the Supreme Court noted that in the petitioner's case, it was indisputable that petitioner had sustained a serious brain injury that impaired his brain function, and that it takes time for such an injury to heal. The Court further stated that the record contained nothing to sufficiently and definitively establish if and when the petitioner had passed from incompetence to competence, and that the petitioner had failed to prove that he was incompetent at the pertinent times, or that he had brought his claims during the sixty[-]day window provided by the after-discovered evidence exception. The Court held that given the language of the

exception coupled with the unique circumstances of the petitioner's case, the petitioner should be provided the opportunity to prove that he was incompetent at the relevant times, and that his incompetence qualifies under the after-discovered evidence exception.

**Commonwealth v. Liebensperger**, 904 A.2d 40, 46-47 (Pa. Super. 2006) (citations to **Cruz** omitted). The **Liebensperger** Court distinguished **Cruz** on the basis that the PCRA petitioner in **Liebensperger**, while suffering from some mental conditions (including "mild mental retardation"), did not have a physical brain injury and was able to cooperate in his own defense. **See id**. at 47-48.

This Court has further explained the scope of **Cruz** as follows:

Only under a *very limited circumstance* has the Supreme Court ever allowed a form of mental illness or incompetence to excuse an otherwise untimely PCRA petition. **See, e.g.**, [] **Cruz**[.] … Thus, the general rule remains that mental illness or psychological condition, absent more, will not serve as an exception to the PCRA's jurisdictional time requirements.

**Commonwealth v. Monaco**, 996 A.2d 1076, 1080-81 (Pa. Super. 2010) (emphasis added).

In the instant appeal, Williams asserts that his low IQ, illiteracy, and "almost psychotic" mental state kept him from exercising due diligence (*i.e.*, timely seeking collateral relief based upon the information contained in the 2014 Letter). However, like the situation in **Liebensperger**, Williams has not pled that he has a brain injury, or that he was unable to assist in his defense at trial. **See Liebensperger**, **supra**. Indeed, Dr. Rotenberg opined that although Williams was mildly mentally retarded, he was nevertheless legally

competent.[8]  *See id.* at 48 (wherein the *Liebensperger* Court stated that "unlike the appellant in *Cruz*, who was at no point deemed competent to stand trial, [Liebensperger] was determined to be competent by Dr. Rotenberg prior to the guilty plea and sentencing.  The type of chronic mental illness suffered by [Liebensperger] is fundamentally different than the effects and circumstances surrounding the appellant's indisputable physical injury to his brain in *Cruz* ….");  *see also Monaco*, *supra*.  Moreover, as this is Williams's third PCRA Petition, it is clear that he has been actively pursuing his avenues of relief, which belies any claim of sustained incompetence.  Thus, this case is sufficiently distinguishable from *Cruz* as to not require us to reach the same result.

Nevertheless, even if Williams had timely invoked the newly-discovered facts exception, he would not be entitled to relief on the merits of his claim.  In this regard, we adopt the PCRA court's cogent rationale on this matter in the Rule 907 Notice:

> [Williams] was not convicted solely on the basis of microscopic hair analysis.  He was found at the scene of the crime covered in blood and wearing a jacket without a shirt.  [*See Williams I*, 650 A.2d at 424-25].  Officer Albert D. Shade, Jr., located a yellow shirt that was stained with blood in a wooded area nearby, and a witness testified that [Williams] was wearing the shirt just prior to the murder.  *Id.* at [424].
>
> In addition, blood found on the inner lining of [Williams's] jacket was the same type of blood as that of the victim, and expert

---

[8] Additionally, the 1995 mental exam essentially showed that Williams's mental state remained the same, to the extent that he was mildly mentally retarded.

- 12 -

testimony established that the pattern of blood droplets on the jacket was consistent with a puncture wound that was made with great force. ***Id.*** at [425]. Therefore, even if the microscopic hair analysis evidence were excluded, [Williams] could not establish that he was convicted of a crime that he did not commit. ***See*** 42 Pa.C.S.A. § 9542.

Order and Notice of Intent to Dismiss, 4/11/18, at 5; ***see also*** 42 Pa.C.S.A. § 9543(a)(2)(i) (noting that in order to be entitled to relief, a PCRA petitioner must establish there was a violation of law "which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.").

Accordingly, because Williams has failed to meet the pleading requirements established in the PCRA, and because we hold that the very limited exception established by ***Cruz*** does not apply to the instant Petition, the PCRA court properly dismissed Williams's Petition as untimely.[9]

Order affirmed.

---

[9] Finally, contrary to Williams's urging, an evidentiary hearing, and/or the appointment of PCRA counsel, was not required because the PCRA court lacked jurisdiction to address Williams's claims. ***See*** Pa.R.Crim.P. 904(D) & (E) (providing that an unrepresented PCRA petitioner filing a serial petition shall only be appointed counsel whenever the interests of justice require it); ***Commonwealth v. Wah***, 42 A.3d 335, 338 (Pa. Super. 2012) (emphasizing that "[t]he right to an evidentiary hearing on a post-conviction petition is not absolute." (citation omitted)).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>2/1/2019</u>