J-S16003-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ESAD LEMO | |
| Appellant | No. 1437 WDA 2015 |

Appeal from the PCRA Order April 13, 2015
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0013042-2006

BEFORE: MOULTON, J., RANSOM, J., and PLATT, J.[*]

MEMORANDUM BY MOULTON, J.: **FILED AUGUST 11, 2017**

Esad Lemo appeals from the April 13, 2015 order entered in the Allegheny County Court of Common Pleas dismissing as untimely his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-46. Because we conclude that issues of material fact exist as to whether Lemo's untimely filed petition meets a time-bar exception, we vacate the order and remand for an evidentiary hearing.

While this case has a long and complicated procedural history, the facts of the underlying offense are straightforward.

> Succinctly, [Lemo] engaged in a pattern of physical and sexual abuse of his wife during their marriage. After she left him and filed for divorce, [Lemo] drove to her residence, observed her on the street, made a U-turn, and

---

[*] Retired Senior Judge assigned to the Superior Court.

>then deliberately drove his car into his wife and propelled her against a wall, instantly killing her.

***Commonwealth v. Lemo***, 1076 WDA 2009, unpublished mem. at 1 (Pa.Super. filed Oct. 6, 2011) (affirming Lemo's conviction on direct appeal).

After taking him to a local hospital for medical evaluation, police questioned Lemo. N.T., 1/21-1/22/09, at 9 ("N.T. Supp."). Lemo is a Bosnian immigrant who apparently neither reads nor writes the English language and whose spoken English is less than rudimentary; accordingly, police arranged for a local Serbo-Croatian immigrant to translate the reading of Lemo's ***Miranda***[1] rights and the subsequent interrogation. ***Id.*** at 7, 10. After waiving his rights, Lemo told police that he had blacked out at the time of the incident. ***Id.*** at 51. When confronted with another prior statement that the car's brakes had failed, Lemo admitted to striking his wife with the car. ***Id.*** at 52-53.

Before his preliminary hearing, Lemo filed a motion seeking involuntary commitment to a mental health facility. On August 31, 2006, a judge of the Court of Common Pleas denied the petition. The next day, the magisterial district court held Lemo's preliminary hearing and bound Lemo's case over on the single charge of criminal homicide.

On December 7, 2006, Lemo filed a second petition for involuntary commitment to a mental health facility. On December 14, 2006, the trial

---

[1] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

court granted this petition, committing Lemo to the care of Mayview State Hospital for 90 days. Throughout pre-trial discovery and motions practice, a number of physicians and psychologists evaluated Lemo, using interpreters to ensure that Lemo could effectively participate in these evaluations. Both the Commonwealth and Lemo amassed a large amount of information on his mental state in anticipation of a diminished-capacity defense, which indicated that, at a minimum, Lemo had borderline mental retardation.

On January 8, 2009, Lemo filed an omnibus pre-trial motion, which included a notice of mental infirmity defense and a motion to suppress statements police elicited from Lemo through the interpreted interrogation. With respect to the motion to suppress, Lemo asserted that he did not knowingly, intelligently, and voluntarily waive his *Miranda* rights. On January 21 and January 22, 2009, the trial court held a suppression hearing,[2] after which it denied the motion. While it recognized that Lemo fell

_____

[2] Lemo was provided a Serbo-Croatian interpreter for both days of the suppression hearing. During the hearing, the prosecutor observed that the interpreter was not always giving a word-for-word translation. N.T. Supp. at 21-22. We note, however, that the courtroom interpretation standard does not require interpreters to give a word-for-word translation, but rather "a complete and accurate interpretation, without altering, omitting, or adding anything to what is stated or written, and without embellishment or explanation." Rule 2, Pennsylvania Rules of Professional Conduct for Judiciary Interpreters, 204 Pa.Code Schedule F. The comment to Rule 2 provides further guidance:

> The interpreter has a twofold duty: (1) to ensure that
> the proceedings in English reflect precisely what was said
> by the limited English proficient (LEP) person . . .; and (2)

*(Footnote Continued Next Page)*

"within the purview of mental retardation," the trial court concluded that this condition "does not mean that he cannot understand what his rights are . . . [or] that he is prohibited from waiving those particular rights." N.T. Supp. at 176-77.

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

> to place the LEP . . . on an equal footing with those who understand English. This creates an obligation to conserve every element of information contained in a source language communication when it is rendered in the target language.
>
> Therefore, interpreters are obligated to apply their best skills and judgment to preserve faithfully the meaning of what is said in court, including the style and register of speech. Verbatim or literal oral interpretations are not appropriate when they distort the meaning of the source language, but every spoken statement, even if it appears non-responsive, obscene, rambling or incoherent should be interpreted. This includes apparent misstatements.

*Id.* at cmt.

At the hearing, the Commonwealth played the tape recording of Lemo's police interrogation. N.T. Supp. at 40-56. On cross-examination, the translator the police had secured for the interrogation stated that she summarized some of Lemo's statements, rather than translating them word-for-word. *Id.* at 61-63. Likewise, she agreed that her translations of the *Miranda* warnings were not all word-for-word. *Id.* at 64-66. The Commonwealth presented its own translator, who testified that Lemo received an accurate translation of his rights, the questions asked, and Lemo's own statements. *Id.* at 68-75. The Commonwealth also called a licensed psychologist and a physician, who concluded that while Lemo had mild mental retardation, Lemo understood his *Miranda* rights. Lemo also presented evidence from a psychologist, who in contrast concluded that Lemo "was not capable of providing a knowing, intelligent, and voluntary waiver of his rights at the time of his interrogation." *Id.* at 146.

At the end of the suppression hearing, Lemo's counsel told the trial court that Lemo was willing to waive his right to a jury trial and proceed non-jury. *Id.* at 181. Lemo's counsel explained that he went "through the entire waiver with [Lemo] over in the jail in which [he] explained everything in great detail with [his] translator." *Id.* at 184. Counsel further explained that he "spent . . . at least an hour just on the waiver for the non[-]jury trial . . . [and he was] prepared to do the waiver again." *Id.*

Lemo's trial commenced on March 12, 2009.[3] At trial, Lemo presented a diminished-capacity defense, arguing that he was incapable of forming the

_____

[3] Before taking any testimony, Lemo's counsel and the trial court discussed Lemo's waiver of his right to a jury trial:

> [LEMO'S COUNSEL]: Thank you, Your Honor. I have discussed going jury and non-jury with my client and we had a very long session with him over in the Allegheny County jail. As the Court is aware, we have demonstrated that he has been classified as mentally retarded, borderline, and we have gone through in great detail, spent a lot of time on it, and we're prepared to do the waiver at the present time.
>
> THE COURT: Do we have the colloquy?
>
> [LEMO'S COUNSEL]: Yes, we do. Your Honor, my client does not read English and his ability to read is very limited. I mean, I can ask him to initial that particular form, but it is not like he is reading it and initialing what he has read. He is answering my questions. If you want me to have him initial the form --
>
> THE COURT: Initial the form.

*(Footnote Continued Next Page)*

intent required for murder, let alone premeditation. On March 16, 2009, the trial court found Lemo guilty of first-degree murder. On March 20, 2009, the trial court sentenced Lemo to life in prison without the possibility of parole.

On March 27, 2009, Lemo filed a post-sentence motion, challenging the weight of the evidence with respect to his intent to kill. Following a hearing, on May 27, 2009, the trial court denied the motion. Lemo was appointed new appellate counsel and timely appealed to this Court. On October 6, 2011, we affirmed Lemo's judgment of sentence. On November

*(Footnote Continued)* _____

> [LEMO'S COUNSEL]: All right. So what I will do if we're going to do it that way then I will read it word for word and a translator will translate it word for word.
>
> THE COURT: Okay. Take a seat.

N.T. Trial, 3/12/09, at 4-5. After a brief recess, the following exchange occurred:

> [LEMO'S COUNSEL]: Your Honor, I do not believe that my client understands every little word that is in this waiver form. The only way that my client understands his right to a jury trial and can do an effective waiver is if I take each paragraph and explain it to him, simplify it for him, go over it, over and over with him to the point where I believe that he understands that is how he understands this. For me to present this to the Court and say that he understands every word that is actually in this waiver form is not really what I am representing.
>
> THE COURT: I understand.

*Id.* The trial court then, through Lemo's interpreter, colloquied Lemo on his right to a jury trial. Lemo stated on the record that he "want[ed] to go before the judge, not a jury." *Id.* at 8.

- 6 -

9, 2011, Lemo filed a petition for allowance of appeal, which the Pennsylvania Supreme Court denied on June 1, 2012. Notably, the record does not indicate whether appellate counsel notified Lemo that his judgment of sentence was affirmed or when his petition for allowance of appeal was denied.

On August 1, 2014, Lemo filed a *pro se* PCRA petition with the assistance of Alex Pakalinsky, a fellow inmate at the State Correctional Institute-Rockview ("SCI-Rockview").[4] On January 27, 2015, Lemo sought leave to supplement his PCRA petition. On March 4, 2015, the PCRA court issued an order appointing Charles R. Pass III, Esquire, to represent Lemo for the PCRA proceedings and granting Lemo until May 4, 2015 to amend his PCRA petition. On April 9, 2015, PCRA counsel filed a motion for leave to withdraw and enclosed a **Turner**/**Finley**[5] letter.[6] Attorney Pass served

---

[4] As a part of his brief to this Court, Lemo attached an affidavit given by Pakalinsky on January 6, 2017. Pakalinsky's affidavit explains how he met and became involved in Lemo's case, how Lemo's linguistic barriers severely hampered Pakalinsky's interactions with Lemo, and the lack of communication between Lemo and his PCRA counsel. We cannot consider the averments in Pakalinsky's affidavit, as it is not contained in the certified record. **See Commonwealth v. Ross**, 57 A.3d 85, 96 n.11 (Pa.Super. 2012) ("[D]ocuments [that] were never authenticated or admitted into evidence . . . may not be considered [on] appeal."). Our decision, however, does not prevent Lemo from presenting the affidavit or Pakalinsky's testimony at his evidentiary hearing.

[5] **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988) and **Commonwealth v. Finley**, 550 A.2d 213 (Pa.Super. 1988) (*en banc*).

these documents on both Lemo and the Commonwealth, providing Lemo with transcripts of his pre-trial, trial, sentencing, and post-sentencing proceedings.[7] On April 13, 2015, the PCRA court issued a notice of intent to dismiss the PCRA petition without a hearing under Pennsylvania Rule of Criminal Procedure 907. On August 17, 2015, the PCRA court dismissed the PCRA petition. On August 27, 2015, Lemo filed a timely notice of appeal.[8]

On July 14, 2015, before the PCRA court dismissed the petition, Lemo filed a petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 in the United States District Court for the Western District of Pennsylvania. On August 10, 2015, the district court appointed the Federal Public Defender's Office to represent Lemo in his *habeas corpus* action. On November 9, 2015, the superintendent of SCI-Rockview and the Attorney General of the Commonwealth of Pennsylvania (together, "respondents") filed a motion to stay Lemo's petition pending resolution of his state court litigation. The district court granted respondents' motion on November 16, 2015, staying

_(Footnote Continued)_ ───────────────

[6] The bulk of Lemo's brief centers on Attorney Pass's failure to communicate with Lemo regarding his PCRA petition and the relative quickness with which Attorney Pass filed a petition to withdraw and **Turner**/**Finley** letter following his appointment. **See** Lemo's Br. at 20-36.

[7] All of the materials Attorney Pass provided to Lemo were in English.

[8] Lemo's notice of appeal was docketed despite the absence of a certificate of service. The clerk of courts notified Lemo of this error on September 3, 2015, and Lemo corrected the error by filing the certificate on September 11, 2015.

the *habeas corpus* proceeding. On February 18, 2016, Lemo filed a motion to expand the appointment of Federal Public Defender to the instant appeal. On February 22, 2016, the district court granted Lemo's motion, and Assistant Federal Public Defender Candice Cain, Esquire, entered her appearance before this Court on March 7, 2016.

Before Attorney Cain entered her appearance, on October 16, 2015, the trial court ordered Lemo to file and serve a Rule 1925(b) statement within 21 days. Lemo failed to do so and, on January 20, 2016, the trial court issued a Rule 1925(a) opinion suggesting that this Court find Lemo's issues waived for his failure to file a Rule 1925(b) statement. On March 7, 2016, the same day Attorney Cain entered her appearance, Lemo filed a petition to remand the matter to the trial court so Lemo could file a Rule 1925(b) statement. On March 18, 2016, we remanded this matter, allowing Lemo to file and serve a Rule 1925(b) statement within 45 days of our order and directing the trial court to prepare a new Rule 1925(a) opinion within 30 days of receiving Lemo's statement. On May 2, 2016, Lemo filed his Rule 1925(b) statement. On August 26, 2016, the trial court filed its Rule 1925(a) opinion.

Lemo raises six issues on appeal:

> I. Did PCRA counsel comply with **Finley** when he filed a no-merit brief nineteen business days after appointment and two days after being informed that [Lemo] had no transcripts and, on account of his language deficits and illiteracy, did not participate in the identification of claims in the *pro se* petition and

could not understand counsel's correspondence because it was in English?

II. Did PCRA counsel comply with *Finley* when he only informed [Lemo] of his post-withdrawal rights in written English after being expressly informed that [Lemo] could not understand English in any form and after counsel averred that he "thoroughly" reviewed a record replete with references to [Lemo]'s mental retardation, language deficits, and illiteracy?

III. Did PCRA counsel comply with *Finley* when he declared meritless a claim for ineffective assistance of trial counsel for conducting an inadequate investigation where PCRA counsel did not consult with [Lemo] or attempt to investigate anything?

IV. Did the PCRA court comply with *Finley* when it dismissed counsel two days after he filed the *Finley* letter and when it dismissed the petition "for all the reasons" in the *Finley* letter and did not reference any independent review of the record?

V. Did the PCRA court adequately inform [Lemo,] a *pro se* defendant[,] of its intent to dismiss his petition where the court sent the order in English despite having known for years that [Lemo] was mentally retarded, illiterate, and required an interpreter at every stage of his prosecution?

VI. Did the *pro se* PCRA petition qualify for any of the statutory timeliness exceptions where [Lemo] was never notified that his conviction was final, where neither his attorneys, courts nor the prison provided interpreter or translation services and where [Lemo] was diligent in pursuing his rights to the extent he is even capable of doing so?

Lemo's Br. at 3-4.

"Our standard of review from the grant or denial of post-conviction relief is limited to examining whether the PCRA court's determination is

supported by the evidence of record and whether it is free of legal error." ***Commonwealth v. Ousley***, 21 A.3d 1238, 1242 (Pa.Super. 2011).

Preliminary, we must address Lemo's sixth issue, where he asserts that that he "can make a showing that his petition is timely filed." Lemo's Br. at 40. While acknowledging that his petition is facially untimely, Lemo asserts that his petition meets an enumerated exception to the PCRA time bar.

It is well settled that "the timeliness of a PCRA petition is a jurisdictional requisite." ***Commonwealth v. Brown***, 111 A.3d 171, 175 (Pa.Super.), *app. denied*, 125 A.3d 1197 (Pa. 2015). A PCRA petition, "including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final." 42 Pa.C.S. § 9545(b)(1). A judgment is final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking [] review." 42 Pa.C.S. § 9545(b)(3).

Lemo's judgment of sentence became final on August 30, 2012, when the time to seek review in the United States Supreme Court expired.[9] He had one year from that date, or until August 30, 2013, to file a timely PCRA

---

[9] Lemo had 90 days from the date the Pennsylvania Supreme Court denied his petition for allowance of appeal to file a petition for a writ of *certiorari* with the United States Supreme Court. ***See*** U.S. S. Ct. R. 13.

petition. Therefore, as Lemo admits, his current petition, filed on August 1, 2014, is facially untimely.

Courts may consider a PCRA petition filed more than one year after a judgment of sentence became final only if the petitioner alleges and proves one of the following three statutory exceptions:

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii); *see Brown*, 111 A.3d at 175-76.

It is well-settled that "a PCRA petition is not subject to the doctrine of equitable tolling," *Commonwealth v. Fahy*, 737 A.2d 214, 222 (Pa. 1999), and the time for filing a PCRA petition "can be extended only to the extent that the PCRA permits it to be extended, *i.e.*, by operation of one of the statutorily enumerated exceptions to the PCRA time-bar," *Commonwealth v. Cruz*, 852 A.2d 287, 292 (Pa. 2004). "[T]he PCRA confers no authority upon [any Pennsylvania court] to fashion *ad hoc* equitable exceptions to the PCRA time-bar in addition to those exceptions expressly delineated in the Act." *Commonwealth v. Robinson*, 837 A.2d 1157, 1161 (Pa. 2003)

(quotation omitted).   In addition, when invoking an exception to the PCRA time bar, the petition must "be filed within 60 days of the date the claim could have been presented."  42 Pa.C.S. § 9545(b)(2).

Lemo argues that two of the time-bar exceptions apply to his petition. First, Lemo asserts that his petition meets the new-facts exception of section 9545(b)(1)(ii).   According to Lemo, his inability to understand written English and general illiteracy prevented him from understanding any written communications "from the time of his sentencing in 2009 until the time that [the Federal Public Defender] was appointed to . . . Lemo's federal habeas matter in 2015 [because] no attorney communicated with . . . Lemo in Bosnian, and no legal letters or documents were provided to him in his native language."  Lemo's Br. at 43.  Thus, Lemo asserts that neither direct appeal counsel nor the courts provided him notice "that his appeal had been finalized in any form that was comprehensible to him."  *Id.* at 44.  Further, Lemo argues that he acted with diligence once Pakalinsky determined that Lemo had not filed a PCRA petition.  Lemo argues that because he

> did not know that his direct appeal had been finalized, he could not have ascertained this fact by the exercise of due diligence previously, and he filed his PCRA petition within 60 days [of] learning (to the extent he could given his limited ability to communicate with Mr. Pakalinsky) the basis for his claims, the "unknown facts" exception in 42 Pa.C.S. § 9545(b)(1)(ii) applies.

*Id.* at 45.

In addition, Lemo asserts that he meets the government-interference exception to the time bar.  Lemo argues that

> despite knowing that . . . Lemo had limited ability to speak or understand English, and despite providing an interpreter to him during all of the proceedings in the trial court, the court failed to provide that same assistance during the direct appeal and post-conviction proceedings. This Court, too, despite its access to and review of the complete trial record did not provide interpreter services during direct appeal proceedings. This failure interfered with . . . Lemo's ability to timely file his PCRA petition because he was simply unaware of the status of those proceedings and had no way of knowing without an interpreter that his direct appeal proceedings had been finalized.

*Id.* at 46.

In response, the Commonwealth states that while the PCRA does not allow for equitable tolling, Lemo's case may present a situation "where it is appropriate to find that the 'governmental interference' statutory exception is applicable, conferring jurisdiction on the court below and [this] Court." Cmwlth.'s Br. at 16. Further, the Commonwealth suggests that

> the primary difficulty in going forward with [Lemo's] case as it currently stands grows from the matter raised in the final claim in [Lemo's b]rief . . .: that [Lemo's] limited ability to speak or understand English, and the fact that, once the trial had ended, there were no further efforts to communicate with him in his native language, may have prevented him from timely exercising his post-conviction rights. Case law suggests that this set of circumstances may, in addition, have resulted in a violation of [Lemo's] due process rights.

*Id.* at 17.

In addition, the Commonwealth notes that on prior occasions, we have, in accordance with Pennsylvania Supreme Court precedent, "allowed PCRA petitioners some leeway in the preservation of claims in their petitions when [the Court] determined that the circumstances demanded it." *Id.* at

23 (quoting **Commonwealth v. Wiley**, 966 A.2d 1153, 1158 (Pa.Super. 2009)). The Commonwealth notes that in **Wiley**, where we found that Wiley's competency was in question and that he was "chronically unrepresented by appointed counsel," **Wiley**, 966 A.2d at 1158, "the appropriate remedy was to remand to the PCRA court to give counsel the opportunity to 'plead and prove' that Wiley could satisfy one of the exceptions to the PCRA's timeliness requirements," Cmwlth.'s Br. at 23 (citing **Wiley**, 966 A.2d at 1159). The Commonwealth, while noting that Lemo's "situation does not squarely fit this precedent, . . . believes it may present 'circumstances' meriting further review below." Cmwlth.'s Br. at 23.

In its Rule 1925(a) opinion, the trial court summarily concluded that Lemo's PCRA petition was untimely and did not meet a time-bar exception:

> It is . . . abundantly clear that the PCRA petition was not filed within the one-year limitation set forth by our legislature in 42 Pa.C.S.A. §[ ]9545. Lemo's PCRA petition was required to be filed by August 30, 2013 – one year after the expiration of the ninety-day period for any timely filing of a petition for writ of certiorari with the United States Supreme Court. The petition was not filed until August 1, 2014, and is clearly untimely.
>
> It is equally clear that Lemo does not fall within the three exceptions to the PCRA statute of limitations. Accordingly, as PCRA counsel observed, Lemo's petition was untimely. A review of the record fully supports that conclusion. Lemo's first three issues, which are pled in a boilerplate fashion, provide no basis to challenge this Court's dismissal of his PCRA petition and granting of counsel's motion to withdraw.

Opinion, 8/26/16, at 5-6 ("1925(a) Op.").

Based on the unique circumstances of this case, we conclude that the trial court erred in summarily concluding, without a hearing, that Lemo's petition did not meet one of the PCRA time-bar exceptions. While we do not address the merits of Lemo's time-bar arguments, we recognize that extraordinary circumstances exist that, in the interests of justice, require us to provide Lemo the opportunity to plead and prove that his petition meets either the government-interference or new-facts exception.

The record shows that Lemo's virtually complete inability to read or understand English, along with his limited mental capacity, undoubtedly hampered his interactions with the justice system. While our Supreme Court has heavily scrutinized PCRA petitioners' claims of mental infirmity as a means to circumvent the time bar, *see generally Commonwealth v. Cruz*, 852 A.2d 287 (Pa. 2004), no Pennsylvania court has considered the effect of anything like the interplay between Lemo's mental retardation and his limited linguistic capabilities. Accordingly we conclude that Lemo must be given an opportunity to present evidence and complete the record in support of his claim that he meets an exception to the PCRA time bar.

Given the unique facts described above, along with the procedural history of Lemo's case, we conclude that the PCRA court erred in dismissing Lemo's PCRA petition without a hearing. We agree with the Commonwealth that, much like *Wiley*, the circumstances of Lemo's case demand "leeway in the preservation of claims in [his] petition[]." *Wiley*, 966 A.2d at 1158 (quoting *Commonwealth v. Blackwell*, 936 A.2d 497, 500 (Pa.Super.

- 16 -

2007)).  Dismissal of PCRA petitions pursuant to Rule 907 should be limited to situations where "there is no genuine issue concerning any material fact, the petitioner is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings."  ***Commonwealth v. Taylor***, 933 A.2d 1035, 1040 (Pa.Super. 2007).  Here, our review of the record reveals several genuine issues of material fact, including:  (1) whether Lemo knew that his judgment of sentence was finalized after the Pennsylvania Supreme Court denied his petition for allowance of appeal; (2) if so, when Lemo learned of the denial; (3) whether Lemo could have ascertained this information earlier through the exercise of due diligence, and (4) whether Lemo filed his *pro se* PCRA petition within 60 days of learning that his judgment of sentence was final.

Accordingly, we vacate the PCRA court's order and remand this matter for an evidentiary hearing, where Lemo will have the opportunity to plead and prove that his petition meets an exception to the PCRA time bar.

Order vacated.    Case remanded with instructions.    Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/11/2017