J-S11029-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARK ANTHONY MARTIN | : | |
| | : | |
| Appellant | : | No. 970 WDA 2021 |

Appeal from the PCRA Order Entered July 20, 2021
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0013843-2011

BEFORE: PANELLA, P.J., OLSON, J., and SULLIVAN, J.

MEMORANDUM BY OLSON, J.: **FILED: MAY 24, 2022**

Appellant, Mark Anthony Martin, appeals from the July 20, 2021 order denying his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9545. We remand this case for further proceedings in accordance with this memorandum.

A panel of this Court previously summarized the factual and procedural history as follows:

> On September 18, 2011, Sonya Smith was watching television inside the second[-]floor bedroom of her residence [] in the Penn Hills section of Allegheny County[, Pennsylvania]. Smith and Appellant had been involved in an intimate relationship since 2006, but became estranged in May 2011. Appellant was familiar with Smith's residence from visiting and staying there throughout their relationship. Smith [] locked all of the doors to her house before retiring to her bedroom that evening. At approximately 3:45 [a.m.,] Smith was awakened by voices outside of her bedroom window. Smith called the police when she heard prying noises at the kitchen window, which

was directly below her bedroom. Appellant and John Sloan, who were unable to gain entry through the locked doors, broke through a windowpane in the kitchen door to gain entry to Smith's home through that door.

Shortly thereafter, Sloan, wearing black sweatpants, a black sweatshirt, gloves, a Halloween mask[,] and a paintball mask, entered Smith's bedroom holding a 9mm firearm. Sloan ordered Smith to lie on her bed facedown and struck Smith in the head and arms multiple times with the firearm. Appellant, who was wearing a light[-]colored t-shirt, grey sweatpants, and a ski mask entered Smith's bedroom shortly after Sloan. Appellant and Sloan straddled Smith and struck her multiple times in the arms and head; Sloan with the firearm and Appellant with a heavy object, most likely a crowbar.

Following the assault, the two men fled the residence. Appellant left first, exiting through the sliding glass door in the dining room, a door that because of its "stickiness" could only be opened by someone familiar with the premises. At the same time[,] Penn Hills police officers arrived on scene in response to Smith's 911 call. Officer Ronald Como, with the assistance of his vehicle spotlight, observed Appellant jog across [the road and] away from Smith's home. Officer Como exited his vehicle to approach Appellant, who immediately encountered dogs in a neighbor's yard. Officer Como's in-vehicle camera captured Appellant's image as he ran across [the road and] away from Smith's home.

Officer Richard Pine approached from the opposite direction and observed Sloan exiting [from] the side kitchen door of Smith's residence and running towards the wooded area behind Smith's home. Sloan was able to escape the immediate area but was stopped by a Penn Hills [police] officer responding to the scene approximately one-half mile away[.] Sloan was taken to the Penn Hills police station to be identified because he had no identification with him[. At the police station, Sloan explained] to the [police] officer that he had been out jogging, "blowing off steam," after a domestic argument. He was later charged with the incident once Smith was able to be interviewed and identified him as one of the assailants.

At approximately 4:30 [a.m.,] Jerome Landrum was awakened by Appellant knocking on his door. Landrum lived [] approximately one[-]half mile from Smith's residence. Landrum had known Appellant for over ten years, but could not see Appellant's face when he looked outside so he called the police and gave a general description of the individual knocking on his door. Unable to gain entry to Landrum's home, Appellant went next door [] and knocked on the door of the home of Glenn Dillard, who was Landrum's uncle. Appellant knew and called out Dillard's name[,] and Dillard admitted him into his residence. Police [officers] responded to the area based on Landrum's call and [because] his description of the person at his door matched [the description of Appellant] provided by Officer Como. The police [officers] did not encounter anyone on [the roadway leading to Dillard's residence] at that time. Landrum entered Dillard's home and encountered Appellant, who told him that he had gotten into an altercation and needed a ride home. Appellant appeared scared and repeatedly looked out the windows of Dillard's home until police [officers] vacated the area. Landrum refused to provide a ride to Appellant, and after approximately fifteen minutes[,] Appellant left Dillard's home.

Penn Hills [police] officers responding to Smith's home entered [Smith's] residence and encountered Smith, severely injured, in her bedroom. She notified [the responding police] officers that she immediately [] recognized Appellant as the second assailant based on his build, height, weight, and distinctive smell. Smith was immediately transported to the hospital for her injuries[. S]he sustained a total of nine broken bones in her arms, bruising on her arms and back, and a concussion. As a result of the attack[,] Smith spent several days in the hospital and one month in a nursing facility for rehabilitation.

On September 23, 2011, *en route* from the rehabilitation facility to attend a funeral, Smith returned home briefly and discovered a book[-]bag belonging to Appellant in the dining room near the sliding glass door that Appellant [] exited [on the night of the incident]. She also found a ski mask on a table near the book[-]bag. Smith contacted the police, who collected the ski mask and the book[-]bag which contained, among other items, a crowbar. The ski mask was submitted

to the crime lab, and a DNA mixture obtained from a tape lift and [a] suspected saliva stain from the mask were compared to the DNA profiles of Appellant and Sloan. Appellant and Sloan could not be excluded as contributors to the sample taken from the tape lift, and Appellant could not be excluded as a contributor to the suspected saliva stain on the ski mask. Smith viewed the video [recorded by] Officer Como's [in-]vehicle [camera] and identified Appellant based on his build, height, weight, and skin color. Kimberly Carson and Beatrice Berry, individuals who had lengthy relationships with Appellant[,] were shown a still photograph from [the camera] video and also identified Appellant. Dillard and Landrum were interviewed at a later date and identified [Appellant] as the individual who entered Dillard's residence in the early morning hours on September 18, 2011.

Trial Court Opinion, 1/5/15[,] at 6-10 (citations and footnote omitted).

Appellant was charged with robbery[ - inflicts serious bodily injury], burglary, aggravated assault[ - serious bodily injury], and criminal conspiracy.[1] [Appellant's] first jury trial resulted in a mistrial when the jury was unable to reach a verdict. The second [jury trial] resulted in the jury convicting Appellant of all charges, with the exception of robbery. The trial court sentenced Appellant to an aggregate term of 17 to 34 years in prison. The trial court denied Appellant's post[-]sentence motions.

*Commonwealth v. Martin*, 2015 WL 6471183, at *1-*3 (Pa. Super. Oct. 26, 2015) (unpublished memorandum) (original brackets omitted). This Court affirmed Appellant's judgment of sentence on October 26, 2015. *Id.* at *4. On April 5, 2016, our Supreme Court denied Appellant's petition for allowance of appeal. *Commonwealth v. Martin*, 136 A.3d 980 (Pa. 2016). Appellant did not seek discretionary review with the Supreme Court of the United States.

_____

[1] 18 Pa.C.S.A. §§ 3701(a)(1)(i), 3502(c)(1), 2702(a)(1), and 903(c), respectively.

Therefore, Appellant's judgment of sentence became final on July 5, 2016.[2]
***See*** 42 Pa.C.S.A. § 9545(b)(3) (stating, "[a] judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of the time for seeking a review"); ***see also*** U.S. Sup. Ct. R. 13(1) (stating, "[a] petition for a *writ* of *certiorari* seeking review of a judgment of a lower state court that is subject to discretionary review by the state court of last resort is timely when it is filed with the Clerk within 90 days after entry of the order denying discretionary review"); ***see also*** 42 Pa.C.S.A. § 9545(b)(3).

According to the PCRA court docket, Appellant filed *pro se* the instant PCRA petition on July 10, 2017. The PCRA court subsequently appointed Thomas N. Farrell, Esquire ("Attorney Farrell") to represent Appellant. Thereafter, Attorney Farrell filed a series of motions for extensions of time to file an amended PCRA petition, which the PCRA court subsequently granted. On June 3, 2020, Attorney Farrell filed a motion to withdraw, as well as a

_____

[2] We observe that the 90th day upon which to file a petition for *writ* of *certiorari* in the case *sub judice* fell on Monday, July 4, 2016, a federal holiday. Therefore, Appellant's judgment of sentence became final on Tuesday, July 5, 2016. ***See*** 1 Pa.C.S.A. § 1908 (stating that, whenever the last day of any period of time referred to in a statute "shall fall on Saturday or Sunday, or on any day made a legal holiday by the laws of this Commonwealth or of the United States, such day shall be omitted from the computation"); ***see also*** 5 U.S.C.A. § 6103(a) (listing Independence Day, July 4, as a federal holiday).

***Turner*/*Finley*** "no merit" letter.[3]  Motion to Withdraw, 6/3/20, at Exhibit 1. Attached as an exhibit to Attorney Farrell's motion to withdraw was a letter directed to Appellant stating that, upon review of the record, Attorney Farrell determined that there were no meritorious issues.  ***Id***. at Exhibit 2.  The letter directed to Appellant stated that copies of the motion to withdraw and the ***Turner*/*Finley*** "no-merit" letter were enclosed.  ***Id.***  Attorney Farrell also advised Appellant that he could, *inter alia*, proceed *pro se* with his PCRA petition or retain private counsel.  ***Id.***

On June 16, 2021, the PCRA court notified Appellant of its intent to dismiss Appellant's PCRA petition pursuant to Pa.R.Crim.P. 907.  In that notice, the PCRA court also granted Attorney Farrell's motion to withdraw. The PCRA court advised Appellant, *inter alia*, that he may respond to the PCRA court's notice of intent to dismiss within 20 days.  Appellant did not file a response.  On July 20, 2021, the PCRA court denied Appellant's PCRA petition.

On July 28, 2021, Lonny Fish, Esquire ("Attorney Fish") entered his appearance as counsel for Appellant and subsequently filed a motion to reconsider the order denying Appellant's PCRA petition.  On August 3, 2021,

---

[3] ***See Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988); ***see also Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1998).

the PCRA court denied Appellant's motion for reconsideration. This appeal followed.[4]

Appellant raises the following issues for our review:

1. Did the [PCRA] court err and abuse its discretion by not granting an evidentiary hearing or new trial based on trial counsel's failure to object to prior bad acts evidence?

2. Did the [PCRA] court err and abuse its discretion by not granting an evidentiary hearing or new trial based on trial counsel's failure to use "Kennywood civil lawsuit depositions" [to impeach] Sonya Smith?

3. Did the [PCRA] court err and abuse its discretion by [not granting] an evidentiary hearing or new trial [based on] trial counsel's [failure] to properly cross[-]examine and impeach [] Cassandra Hicks?

4. Did the [PCRA] court err and abuse its discretion by [not granting] an evidentiary hearing or new trial [based on] the reported after-discovered evidence, namely the affidavit of Beatrice Berry?

Appellant's Brief at 6 (extraneous capitalization omitted).

Preliminarily, we must determine whether Appellant filed a timely appeal, as the timeliness of an appeal implicates this Court's jurisdiction. *Commonwealth v. Crawford*, 17 A.3d 1279, 1281 (Pa. Super. 2011) (stating that, it is well-settled that jurisdiction is vested in this Court upon the filing of a timely notice of appeal, and the timeliness of an appeal may be

---

[4] The PCRA court did not order Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The PCRA court filed its Rule 1925(a) opinion on September 14, 2021, stating that it relied upon the reasons set forth in its Rule 907 notice to support its order denying Appellant's petition.

considered *sua sponte*); ***see also*** Pa.R.A.P. 903(a) (stating that, in general, a notice of appeal must be filed within 30 days after the entry of the order from which the appeal is taken); ***Moore v. Moore***, 634 A.2d 163, 167 n.1 (Pa. 1993) (stating, a motion for reconsideration of an order does not stay the deadline in which to file a notice of appeal), *citing* Pa.R.A.P. 1701(b)(3).

The record demonstrates that the PCRA court denied Appellant's petition on July 20, 2021. On July 28, 2021, Attorney Fish entered his appearance as counsel for Appellant and subsequently filed a motion for reconsideration of the July 20, 2021 order denying Appellant's PCRA petition. The PCRA court denied the motion for reconsideration on August 3, 2021. Attorney Fish filed a notice of appeal, which was docketed by the PCRA court on August 20, 2021, 31 days after the order denying Appellant's petition was entered.

On September 20, 2021, this Court entered a *per curiam* order directing Appellant to show cause why the appeal should not be quashed as untimely. Appellant filed a response with this Court on September 28, 2021. In his response, Appellant asserted that on August 19, 2021, while attempting to file the notice of appeal electronically, PCRA counsel "reached the 'verification' portion [of the electronic filing platform] and [was] not given any way of attaching payment for the required filing fees."[5] Response to Rule to Show

---

[5] Attached to Appellant's response to the rule to show cause order were screen shots of the various pages of the electronic filing platform. Some of the screen shots reveal that they were captured on September 21, 2021. ***See*** Response to Rule to Show Cause, 9/28/21, at Exhibit A ("Cases" and "Filing Type" screen

Cause, 9/28/21, at ¶3. Attorney Fish avers that he "immediately contacted the Allegheny County[-]Department of Court Records and notified [the office] of [his] filing dilemma[,] as well as the impending deadline." *Id.* at ¶4. Attorney Fish contends he was instructed to mail a copy of the notice of appeal with the required payment. *Id.* at ¶6. Attorney Fish, thereupon, sent a copy of the notice of appeal *via* overnight courier for delivery the next day. The PRCA court docket reveals that the notice of appeal was received and filed on August 20, 2021.

The PCRA court docket indicates that service of the July 20, 2021 order denying Appellant's PCRA petition was only served on the Allegheny County District Attorney's Office – Criminal Division.[6] There is no indication on the docket that service was provided to Appellant, who, at this point, was

_____

shots). Other screen shots were captured without the date of capture included in the screen shot. *Id.* ("Participants," "Counsel," "eService," and "Filing Documents" screen shots). Conspicuously absent from the exhibit, however, is a screen shot of the "Verification" page of the electronic filing platform showing the error message Attorney Fish allegedly received on August 19, 2021. Although PCRA counsel may have experienced a glitch on the electronic filing platform on August 19, 2021, a technological issue such as this is the type of risk counsel takes in waiting to file a notice of appeal on the final date of the appeal period. Moreover, Attorney Fish does not aver a breakdown in the judicial system, such as a systemwide outage or an erroneous message concerning the timeliness of the filing. As such, Appellant's notice of appeal ostensibly was not timely filed.

[6] In contrast, the PCRA court's Rule 907 notice to dismiss was served on the Allegheny County District Attorney's Office – Criminal Division, then-PCRA counsel – Attorney Farrell, and several of Appellant's prior counsel.

unrepresented and acting *pro se* by virtue of the PCRA court's order granting Attorney Farrell's motion to withdraw.

Pennsylvania Rule of Criminal Procedure 114(B)(1) requires the clerk of courts to serve promptly a copy of any trial court order or notice on each party's attorney-of-record or the party if unrepresented.[7]  Pa.R.Crim.P. 114(B)(1).  To memorialize that proper service of a trial court order or notice was provided, Rule 114(C)(2)(c) requires the clerk of courts to note, *via* a docket entry, the date of service of such trial court order or notice.[8] Pa.R.Crim.P. 114(C)(2)(c).  It is well-settled that the appeal period only begins to run on the date the clerk of courts mails or delivers a copy of the trial court order or notice to the parties.  Pa.R.A.P. 108(a)(1), (d), and *Note* (stating, the purpose of this rule is to fix that date from which the time for appeal shall be computed); ***see also Commonwealth v. Carter***, 122 A.3d 388, 391 (Pa. Super. 2015) (stating that, the "appeal period only begins running on the date the [clerk of courts] mails or delivers copies of the orders to the parties" (original quotation marks omitted)), *appeal denied*, 195 A.3d 561 (Pa. 2018); ***Commonwealth v. Jerman***, 762 A.2d 366, 368 (Pa. Super. 2000).

---

[7] In most instances, the clerk of courts is tasked with serving a copy of the trial court order or notice on the party's attorney or the *pro se* party unless otherwise prescribed by local rule.  Pa.R.Crim.P. 114(B)(2).

[8] The docket entry must also contain, at a minimum, a notation of the date of receipt in the clerk of courts' office of the trial court order or notice and the date appearing on the trial court order or notice.  Pa.R.Crim.P. 114(C)(2)(a) and (b).

Because the PCRA court docket does not contain the entry information prescribed by Rule 114, we are unable to discern the date upon which the clerk of courts served Appellant with a copy of the July 20, 2021 dismissal order. A breakdown in the judicial system occurs if the clerk of courts fails to note on the docket the date upon which a trial court order or notice has been served upon a party. *Jerman*, 762 A.2d at 368 (finding a breakdown in the judicial system and deeming the appeal timely when the clerk of courts failed to serve a copy of an order on the party). As a result of this breakdown, the period in which Appellant may file a notice of appeal has not begun to run. Therefore, we deem Appellant's notice of appeal to be timely filed on August 20, 2021.[9] *Id.*

Next, we must address the timeliness of Appellant's PCRA petition filed on July 10, 2017, since this issue also implicates our Court's jurisdiction. *In re Payne*, 129 A.3d 546, 555 n.12 (Pa. Super. 2015) (*en banc*), *appeal denied*, 145 A.3d 167 (Pa. 2016). It is well-established that the timeliness of a PCRA petition is jurisdictional and that if a PCRA petition is untimely, courts lack jurisdiction over the claims and cannot grant relief. *Commonwealth v. Wharton*, 886 A.2d 1120, 1124 (Pa. 2005); *see also Commonwealth v.*

---

[9] It may be inferred that, despite the breakdown in the judicial system, Appellant received a copy of the July 20, 2021 order at some point shortly after its filing because Attorney Fish entered his appearance on July 28, 2021, and subsequently filed a motion for reconsideration on July 30, 2021. Nevertheless, we are unable to determine from the record when the clerk of courts mailed the July 20, 2021 order to Appellant and, thereby, triggered the commencement of the appeal period.

- 11 -

*Callahan*, 101 A.3d 118, 121 (Pa. Super. 2014) (holding, courts do not have jurisdiction over an untimely PCRA petition). To be timely filed, a PCRA petition, including second and subsequent petitions, must be filed within one year of the date a petitioner's judgment of sentence becomes final. 42 Pa.C.S.A. § 9545(b)(1). "A judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of the time for seeking the review." 42 Pa.C.S.A. § 9545(b)(3). The PCRA's jurisdictional time restriction is constitutionally sound. *Commonwealth v. Cruz*, 852 A.2d 287, 292 (Pa. 2004).

As discussed *supra*, this Court affirmed Appellant's judgment of sentence on October 26, 2015, and our Supreme Court subsequently denied his petition for allowance of appeal on April 5, 2016. *Commonwealth v. Martin*, 2015 WL 6471183 (Pa. Super. Oct. 26, 2015) (unpublished memorandum), *appeal denied*, 136 A.3d 980 (Pa. 2016). Appellant did not seek discretionary review with the Supreme Court of the United States, and, consequently, Appellant's judgment of sentence became final on July 5, 2016. Therefore, Appellant had until July 6, 2017 in which to file a timely PCRA petition. 42 Pa.C.S.A. § 9545(b)(1) (stating, a PCRA petition, "including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final" unless the petitioner alleges and proved one of the three enumerated exceptions set forth herein).

Appellant acknowledges in his *pro se* PCRA petition that his judgment of sentence became final on July 5, 2016, and further recognized that he had one year thereafter to file a timely PCRA petition. Appellant's *Pro Se* PCRA Petition, 7/10/17, at ¶¶24, 26. Appellant asserts that he filed his PCRA petition before July 5, 2017. *Id.* at ¶26. To reiterate, the PCRA docket shows that Appellant's *pro se* PCRA petition was filed on July 10, 2017, four days after the deadline on which to file a timely PCRA petition in the case *sub judice*. The copy of the *pro se* PCRA petition that is part of the certified record does not bear a timestamp showing the date upon which it was received or recorded as filed by the PCRA court. Moreover, Appellant's petition in the certified record is unsigned and undated. *Id.* at 60. The certificate of service attached thereto is unsigned and undated and does not state the date upon which service was effectuated. *Id.* at 61-62. Finally, the verification attached to the petition is unsigned and undated.[10] *Id.* at 63. As such, we are unable to discern whether Appellant's PCRA petition was timely filed on or before July 6, 2017. Consequently, we are constrained to remand this case so the PCRA court may conduct an evidentiary hearing to determine the date upon which Appellant's PCRA petition was filed.[11] The PCRA court shall conduct such an

---

[10] We further note that a copy of the envelope used to submit the *pro se* PCRA petition, which would presumably bear the date upon which the submission was mailed, is not part of the certified record.

[11] In his *pro se* petition, Appellant alleges that he received exculpatory evidence in the form of an affidavit dated March 23, 2017, as well as two

evidentiary hearing, file a supplemental opinion of its findings, and return the certified record within 60 days of the date of this memorandum.

Case remanded for further proceedings. Jurisdiction retained.

---

police incident reports (reports numbered 1100004735 and 1100021491) on March 27, 2017. Appellant's *Pro Se* PCRA Petition, 7/10/17, at 56-60. Although he referenced this evidence as "newly-discovered evidence" (**see id.**), this evidence may serve as an exception to the PCRA jurisdictional time-bar, in which case the evidence must satisfy the newly-discovered facts exception, and – separately - as a ground for relief, in which case the evidence must satisfy the after-discovered evidence test. **Commonwealth v. Small**, 238 A.3d 1267, 1286 (Pa. 2020) (noting that, the newly-discovered facts exception to the jurisdictional time-bar is distinct from an after-discovered evidence claim, which is a substantive basis for relief pursuant to 42 Pa.C.S.A. § 9543(a)(2)(iv)).

In the case *sub judice*, if Appellant's PCRA petition is determined to be untimely filed based upon the date Appellant delivered the notice of appeal to prison authorities or placed it in the institutional mailbox (**Commonwealth v. Chambers**, 35 A.3d 34, 39 (Pa. Super. 2011) (stating that, pursuant to the "prisoner mailbox rule," "a *pro se* prisoner's appeal shall be deemed to be filed on the date that he[, or she,] delivers the appeal to prison authorities [or] places his[, or her,] notice of appeal in the institutional mailbox"), *appeal denied*, 46 A.3d 715 (Pa. 2012)), the PCRA court shall conduct further inquiry to determine whether Appellant sufficiently pleaded and proved the newly-discovered facts exception to the PCRA jurisdictional time-bar. **Commonwealth v. Bennett**, 930 A.2d 1264, 1274 (Pa. 2007) (stating that, to invoke the newly-discovered facts exception, the petitioner must plead and prove the facts were "unknown" to him, or her, and that he, or she, could not uncover them with the exercise of "due diligence"); **see also Small**, 238 A.3d at 1286 (stating, "the newly[-]discovered fact exception does not require any merits analysis of the underlying claim, and application of the time-bar exception therefore does not necessitate proof of the elements of a claim of after-discovered evidence").