J-S17024-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| CHRISTOPHER FREEMAN | : | |
| | : | |
| Appellant | : | No. 1228 WDA 2022 |

Appeal from the PCRA Order Entered October 5, 2022
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0015155-2010

BEFORE: LAZARUS, J., OLSON, J., and KING, J.

MEMORANDUM BY OLSON, J.: **FILED: August 31, 2023**

Appellant, Christopher Freeman, appeals from the October 5, 2022 order entered in the Court of Common Pleas of Allegheny County that dismissed his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.[1]  We affirm.

This Court previously summarized the factual history as follows:

During the late evening on July 6, 2010, [Appellant] went [] to the house of a friend[] to hang out on the porch, play video games, and smoke marijuana.  [The friend's house] is located [in the Sheraden neighborhood of the City of] Pittsburgh, Pennsylvania[.]  The victim [was a neighbor of Appellant's friend.]  On that

---

[1] Although the PCRA court docket identifies the October 5, 2022 order as an order dismissing a second motion and a third motion to amend Appellant's PCRA petition, a review of the October 5, 2022 order demonstrates that, in said order, the PCRA court, in fact, dismissed Appellant's PCRA petition, as more fully discussed herein.  PCRA Court Order, 10/5/22, at 2 (stating, the PCRA court "hereby dismisses the second amended PCRA petition and the third amended PCRA petition" (extraneous capitalization omitted)).

evening, the victim] apparently approached [Appellant and the friend], mumbled something, and [Appellant] asked the victim to repeat what he [] said. [The friend] heard the victim say "you" and [a derogatory remark. Appellant] became visibly upset[,] and the victim retreated to his house. [Appellant] then left [the friend's house.]

Several hours later, [the friend] was in his dining room, at his computer, when he noticed motion-sensor lights go on at the victim's house. He heard three loud bangs and looked out the window. [The friend] observed three men in dark clothing, including [Appellant], standing outside the victim's home. [Appellant], who had a shirt covering the lower half of his face,[FN3] told [the friend], "You didn't see anything." He then pulled a gun from his waistband, and pointed it at [the friend. The friend] closed his [window] blinds and went back into his dining room. [The friend] then heard the sound of both of the victim's vehicles, a red Chevy pickup truck and a blue Pontiac Sunbird, drive off.[FN4]

> [Footnote 3: The friend] testified [that] he recognized [Appellant] based on his hair, height, eyes, voice, and because he had on the same clothes as earlier in the evening.
>
> [Footnote 4:] Two other witnesses[] testified that they lived on the same street as the victim and [the friend], and they saw both of the victim's [vehicles] driving [] down the street. [One of the witnesses] also stated that she saw two people in the Pontiac and one person in the truck.

The next morning [(July 7, 2010), the friend] went to the victim's home and saw that the front door had been damaged[,] and the air conditioning unit was hanging [from] the window. He opened the door slightly and observed the victim on the [floor]. He called out the victim's name, heard no response, and went back to his house to call 911 [emergency services].

Detective Christine Williams of the City of Pittsburgh Police Department [("Detective Williams")] responded to the scene and found the victim dead, as a result of two gunshot wounds to the shoulder and [the] chest. The victim also suffered from blunt force trauma to his scalp, at the top and back of his head. Detective Williams indicated [that] the interior of the residence looked like it had been ransacked, with furniture overturned, the doorjamb pulled away from the frame of the door, and a large sliding window hanging [from] the window frame. Detective

Williams also found three live bullet casings, and two spent bullet casings in the same room. Police officers issued a "be on the lookout" report for the victim's two vehicles.

That same day, Detective John Lewis [("Detective Lewis")] was taking part in an unrelated narcotics investigation near the entrance to Sheraden Park when he observed two men standing [next] to a red pickup truck talking to a third man, who was behind the wheel of a blue Pontiac. Detective Lewis identified [Appellant and a second man] as the two men standing outside the truck and the driver of the Pontiac as Marshineak Manning [("Manning"). Detective Lewis] saw Manning stop the [Pontiac] and talk to [Appellant and the other man] for a couple of minutes before driving off. [Appellant] was taken into custody as part of that unrelated [narcotics] investigation. He was searched incident to arrest[,] and a set of keys was seized. The [Pontiac] and the truck were found and subsequently determined to be the victim's missing vehicles. The keys found on [Appellant's person] fit in the lock and ignition for the red truck.

When the [police] officers investigating the victim's murder learned that [Appellant] had been arrested near the victim's truck, they asked to speak with him on July 8, 2010. He agreed to speak without a lawyer and signed a police interrogation warning form. During the interrogation, [Appellant] maintained he did not know the victim, nor was he familiar with the street where the victim lived. When asked about the truck, [Appellant] said he was never with a red truck and did not know anything about a red truck. He denied talking to anyone inside a blue Pontiac or ever being in Sheraden Park. The investigating detective, James McGee [("Detective McGee")], then asked [Appellant, "]Well, if you didn't have anything to do with the red pickup truck, why did you have the keys that belonged to the red pickup truck?[" Appellant] said he [] found [the] keys in Sheraden Park. When confronted with the fact that he [] just said that he had never been in the park, [Appellant] responded, "Well, I mean over by the high school." After questioning, [Appellant] was not arrested for the [victim's] murder.

Also during this time, [the friend] did not tell the police about the events that transpired the night [of July 6, 2010,] because he was "scared." Shortly after the incident, [the friend] said that a man approached him and threatened him not to tell police what he knew about the murder. The man also told [the friend] that he had to send money to post [Appellant's] bond for his arrest on the

other charges and to put money in [Appellant's] "book." [The friend] paid the bond, but the threats and demands for money continued. In mid-October 2010, tired of the threats and demand[s] for [money, the friend] went to the police, telling them what he knew about [Appellant] and the night in question. [The friend] also identified Manning as the individual that threatened him and forced him to send money to [Appellant].

Based on this evidence, [Appellant] was arrested for [the victim's] murder on October 15, 2010.

*Commonwealth v. Freeman*, 195 A.3d 1041, 2018 WL 4102788, at *1-*2 (Pa. Super. filed Aug. 29, 2018) (unpublished memorandum) (extraneous capitalization omitted).

On October 25, 2012, a jury convicted Appellant of second-degree murder, robbery of motor vehicle, burglary, and conspiracy to commit burglary.[2] On January 9, 2013, the trial court imposed an aggregate sentence of life imprisonment without the possibility of parole.[3] On January 14, 2013, Appellant filed a post-sentence motion, which the trial court subsequently denied on April 24, 2013.

This Court affirmed Appellant's judgment of sentence on July 30, 2015. *Commonwealth v. Freeman*, 125 A.3d 466, 2015 WL 6132355 (Pa. Super.

_____

[2] 18 Pa.C.S.A. §§ 2502(b), 3702(a), 3502(a), and 903 (3502(a)), respectively.

[3] Appellant was sentenced to life imprisonment without the possibility of parole for his second-degree murder conviction. The trial court sentenced Appellant to 5 years' incarceration for the robbery of motor vehicle conviction and 2 years' incarceration for the burglary conviction. Both sentences were set to run concurrent to Appellant's life sentence. No further penalty was imposed for Appellant's conspiracy conviction.

filed Jul. 30, 2015) (unpublished memorandum). Appellant did not seek discretionary review by our Supreme Court and, as such, his judgment of sentence became final on Monday, August 31, 2015. **See** 42 Pa.C.S.A. § 9545(b)(3) (stating, "[a] judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of the time for seeking the review"); **see also** Pa.R.A.P. 1113(a) (requiring a petition for allowance of appeal to be filed within 30 days after entry of an order of this Court sought to be reviewed); 1 Pa.C.S.A. § 1908 (stating that, whenever the last day of any period of time referred to in a statute "shall fall on Saturday or Sunday, or on any day made a legal holiday by the laws of this Commonwealth or of the United States, such day shall be omitted from the computation").

On December 4, 2015, Appellant filed *pro se* a PCRA petition, his first. Counsel was appointed to represent Appellant. Counsel filed an amended PCRA petition on May 3, 2016, and a second amended PCRA petition on July 8, 2016. On January 18, 2017, after first conducting a **Grazier** hearing,[4] the PCRA court granted Appellant's request for self-representation and directed Appellant to file an amended PCRA petition, if necessary.[5] Appellant filed *pro*

---

[4] **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998).

[5] The PCRA court directed that PCRA counsel would remain as stand-by counsel. PCRA Court Order, 1/18/17.

*se* amended PCRA petitions on March 21, 2017, April 10, 2017, and June 15, 2017. On July 11, 2017, the PCRA court notified Appellant of its intent to dismiss his PCRA petition without a hearing pursuant to Pennsylvania Rule of Criminal Procedure 907. Appellant did not file a response to the Rule 907 notice. The PCRA court denied Appellant's petition on October 18, 2017. This Court affirmed the order denying Appellant's PCRA petition on August 29, 2018. **Freeman**, 195 A.3d 1041, 2018 WL 4102788, at *1.

While Appellant's appeal of the October 18, 2017 order denying his PCRA petition was pending before this Court, Appellant filed *pro se* a new PCRA petition on March 7, 2018. On March 26, 2018, the PCRA court informed Appellant that no further action on the PCRA petition would be taken at that time. This Court affirmed the denial of Appellant's first PCRA petition on August 29, 2018. Appellant filed a petition for allowance of appeal with our Supreme Court, which was denied on June 10, 2019.

On July 3, 2019, Appellant filed *pro se* a petition "to reopen" his March 2018 PCRA petition. On July 23, 2019, Appellant filed *pro se* an amended PCRA petition. On July 24, 2019, the PCRA court notified Appellant that he may proceed with his March 2018 PCRA petition. The PCRA court, upon Appellant's request, appointed PCRA counsel on September 13, 2019 to represent Appellant. On September 30, 2019, the PCRA court provided Appellant notice of its intent to dismiss his PCRA petition pursuant to Rule 907.

On December 6, 2019, the PCRA court vacated its September 30, 2019 Rule 907 notice to permit PCRA counsel an opportunity to file an amended

petition, if necessary. PCRA counsel filed an amended PCRA petition on December 13, 2020, and a second amended PCRA petition on November 11, 2021.[6] On March 21, 2022, the PCRA court provided Appellant notice of its intent to dismiss his November 2021 amended PCRA petition without a hearing pursuant to Rule 907. Appellant filed objections to the PCRA court's Rule 907 notice on April 4, 2022. On May 30, 2022, counsel filed a third amended PCRA petition.[7] On October 5, 2022, the PCRA court dismissed Appellant's PCRA petition.[8] This appeal followed.[9]

_____

[6] Meanwhile, Appellant filed *pro se* another PCRA petition on February 23, 2022. On March 28, 2022, the PCRA court directed PCRA counsel to confer with Appellant and ascertain whether Appellant wished to continue with counsel or proceed *pro se*. On April 4, 2022, PCRA counsel notified the PCRA court that, upon conference, Appellant wished to remain represented by counsel and proceed with the current (November 2021) amended PCRA petition.

[7] The third amended PCRA petition incorporated all of the claims set forth in the second amended PCRA petition, and raised a new claim for ineffective assistance of original PCRA counsel, based upon our Supreme Court's recent holding in **Commonwealth v. Bradley**, 261 A.3d 381 (Pa. 2021), which permits a petitioner to raise claims of ineffective assistance of PCRA counsel at the first opportunity, even if on appeal. **Bradley**, 261 A.3d at 405.

[8] On October 27, 2022, PCRA counsel filed with this Court a petition to withdraw as counsel for Appellant. In a November 10, 2022 *per curiam* order, this Court remanded the case so the PCRA court could conduct a **Grazier** hearing to determine whether Appellant wished to proceed *pro se* or continue counsel's representation on appeal. On December 7, 2022, the PCRA court provided notification that Appellant wanted to remain with PCRA counsel.

[9] The PCRA court did not order Appellant to file a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). On November 3, 2022, the PCRA court filed a Rule 1925(a) opinion, relying on its October 5, 2022 order dismissing Appellant PCRA petition.

Appellant raises the following issues for our review:

[1.    Whether] the PCRA court erred in dismissing the petition as untimely because [Appellant] established that his case falls within an exception to the timeliness provisions of the [PCRA], and the PCRA court did have jurisdiction to review the merits of his petition[?]

[2.    Whether] the PCRA court erred in dismissing the petition as untimely regarding [Appellant's ***Commonwealth v. Bradley***, 261 A.3d 381 (Pa. 2021)] claims before giving notice of intent to dismiss, providing the [PCRA] court's reasons [for dismissal], and allowing [Appellant] to respond before entry of a final order, pursuant to [] Rule 907[?]

[3.    Whether] the PCRA court erred in dismissing the petition as untimely where Manning's affidavit contained [after-]discovered evidence that warrant[s] a new trial[?]

Appellant's Brief at 5.

In addressing Appellant's issues, we are mindful of our well-settled standard and scope of review of an order denying a PCRA petition. Proper appellate review of a PCRA court's dismissal of a petition is limited to an examination of "whether the PCRA court's determination is supported by the record and free of legal error." ***Commonwealth v. Miller***, 102 A.3d 988, 992 (Pa. Super. 2014) (citation omitted). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." ***Commonwealth v. Lawson***, 90 A.3d 1, 4 (Pa. Super. 2014) (citations omitted). "This Court grants great deference to the findings of the PCRA court, and we will not disturb those findings merely because the record could support a contrary holding." ***Commonwealth v. Hickman***, 799 A.2d 136, 140 (Pa. Super. 2002) (citation omitted). In contrast, we review the PCRA court's

legal conclusions *de novo*. **Commonwealth v. Henkel**, 90 A.3d 16, 20 (Pa. Super. 2014) (*en banc*), *appeal denied*, 101 A.3d 785 (Pa. 2014).

It is well-established that the timeliness of a PCRA petition is jurisdictional, and if a PCRA petition is untimely, courts lack jurisdiction over the claims and cannot grant relief. **Commonwealth v. Wharton**, 886 A.2d 1120, 1124 (Pa. 2005); **see also Commonwealth v. Callahan**, 101 A.3d 118, 121 (Pa. Super. 2014) (holding, courts do not have jurisdiction over an untimely PCRA petition). To be timely filed, a PCRA petition, including second and subsequent petitions, must be filed within one year of the date a petitioner's judgment of sentence becomes final. 42 Pa.C.S.A. § 9545(b)(1). "A judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of the time for seeking the review." 42 Pa.C.S.A. § 9545(b)(3). The PCRA's jurisdictional time restriction is constitutionally sound. **Commonwealth v. Cruz**, 852 A.2d 287, 292 (Pa. 2004).

As discussed *supra*, Appellant's judgment of sentence became final on August 31, 2015. Therefore, Appellant had until September 1, 2016, in which to file a timely PCRA petition. 42 Pa.C.S.A. § 9545(b)(1) (stating, a PCRA petition, "including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final" unless the petitioner alleges and proves one of the three enumerated exceptions set forth herein). Appellant filed *pro se* his current PCRA petition on July 23, 2019, more than two years

and ten months after the deadline for filing a timely PCRA petition.[10]
Therefore, Appellant's July 2019 petition is patently untimely.[11]

If a PCRA petition is untimely filed, the jurisdictional time-bar can only be overcome if the petitioner alleges and proves one of the three statutory exceptions, as set forth in 42 Pa.C.S.A. § 9545(b)(1). *Commonwealth v. Spotz*, 171 A.3d 675, 678 (Pa. 2017). The three narrow statutory exceptions to the one-year time-bar are as follows: "(1) interference by government officials in the presentation of the claim; (2) newly[-]discovered facts; and (3) an after-recognized constitutional right." *Commonwealth v. Brandon*, 51 A.3d 231, 233-234 (Pa. Super. 2012), *citing* 42 Pa.C.S.A. § 9545(b)(1)(i-iii). A petition invoking an exception to the jurisdictional time-bar must be filed within one year of the date that the claim could have been presented.[12] 42 Pa.C.S.A. § 9545(b)(2) (effective Dec. 24, 2018). If a petitioner fails to invoke

_____

[10] For the reasons discussed more fully herein, we deem Appellant's July 2019 petition, as amended thereafter, to be his current PCRA petition.

[11] Appellant concedes that his PCRA petition is untimely. *See* Appellant's Brief at 21.

[12] We note that effective December 24, 2018, the time-period in which to file a petition invoking one of the three exceptions was extended from 60 days to one year. 42 Pa.C.S.A. § 9545(b)(2). This amendment applies to claims arising one year prior to the effective date of the amendment, *i.e.*, December 24, 2017, or later. Act. 2018, Oct. 24, P.L. 894, No. 146, § 3. Because Appellant filed his PCRA petition on July 23, 2019, this amendment applies, and Appellant had one year in which to file a petition that validly invoked any of the exceptions to the PCRA's time-bar.

a valid exception to the PCRA time-bar, courts are without jurisdiction to review the petition and provide relief. ***Spotz***, 171 A.3d at 676.

It is well-established that, to invoke the newly-discovered facts exception, the petitioner must plead and prove facts that were "unknown" to him or her, and that he or she could not uncover such facts with the exercise of "due diligence." ***Commonwealth v. Bennett***, 930 A.2d 1264, 1274 (Pa. 2007); ***see also Commonwealth v. Small***, 238 A.3d 1267, 1271 (Pa. 2020) (stating that, the newly-discovered facts exception "renders a petition timely when the petitioner establishes that the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence"). Our Supreme Court recently reiterated the well-established principle that a judicial decision does not constitute a "fact" for purposes of the newly-discovered facts exception. ***Commonwealth v. Reid***, 235 A.3d 1124, 1147 (Pa. 2020).

Here, Appellant asserts the newly-discovered facts exception to the jurisdictional time-bar based on an affidavit he obtained from Manning. Appellant's Brief at 22; ***see also*** *Pro Se* PCRA Petition, 7/23/19, at Exhibit 1; Amended PCRA Petition, 12/13/20, at 9; Second Amended PCRA Petition, 11/1/21, at 9. Appellant contends that the information contained in the affidavit "contradicts the [Commonwealth's] sole witness[, the friend, as] to the events that led to the death of [the] victim[.]" *Pro Se* PCRA Petition, 7/23/19, at Motion for PCRA Relief ¶5.

The PCRA court found that the affidavit constituted a fact for purposes of satisfying the newly-discovered fact exception to the jurisdictional time-bar. PCRA Court Opinion, 3/21/22, at 8. The PCRA court further found, however, that Appellant, in July 2017, was aware of Manning and his version of the events surrounding the murder, as later set forth in an affidavit, based upon a letter Appellant wrote to his mother. *Id.* at 9. The PCRA court held that Appellant, upon learning of the factual basis underlying the affidavit, failed to exercise due diligence in obtaining the affidavit from Manning and presenting the same to the PCRA court within the required timeframe. *Id.* at 9.

The record demonstrates that, in a letter dated July 11, 2017, and addressed to his mother, Appellant detailed "some revelations" that he recently learned from a fellow inmate about a conversation the inmate had with Manning, while the inmate and Manning were incarcerated at the same state correctional institution. *Pro Se* PCRA Petition, 7/23/19, at Exhibit 2 (Letter). The information Appellant learned from the inmate is essentially re-stated in Manning's affidavit, as discussed *infra*. *Id.* In the letter, Appellant asked his mother to contact Manning and request that he provide an affidavit regarding his version of the events surrounding the victim's murder. *Id.*

Thereafter, on October 16, 2017, Appellant wrote a letter to Manning requesting that Manning provide a sworn affidavit explaining his version of the events pertaining to the victim's murder. *Pro Se* PCRA Petition, 7/23/19, at Exhibit 6 (Letter). Appellant avers that he received Manning's affidavit on

- 12 -

February 6, 2018. The essence of the affidavit was that Manning had been contacted by the friend, that the friend asked him to "beat up [the victim]" and "get [the victim] out of the picture," and, when Manning went to the friend's house, the friend asked Manning to get rid of a Pontiac vehicle for him. *Pro Se* PCRA Petition, 7/23/19, at Exhibit 1 (Affidavit).

Upon review, we concur with the PCRA court, and the record supports, that the affidavit constitutes a "fact" for purpose of the newly-discovered facts exception because the affidavit contains newly-discovered information that offers a different version of the events surrounding the victim's murder. **See** Second Amended PCRA Petition, 11/1/21, at 10 (stating, the affidavit contains information that is exculpatory in nature, was unavailable to Appellant at the time of trial, and if presented at trial, could have resulted in a different outcome). Appellant did not learn of Manning's version of events until July 2017. The PCRA court erred, however, in determining that Appellant failed to exercise due diligence in obtaining the affidavit. Upon learning of Manning's version of events surrounding the murder, Appellant wrote his mother asking that she contact Manning to obtain his sworn statement of events. In the meantime, Appellant initiated the formal process requesting that he be permitted too directly correspond with another inmate (Manning) who was housed at a different state correctional institution. Upon receiving permission to communicate directly with Manning, Appellant wrote a letter to Manning asking him to provide a sworn statement detailing his recollection of events. Manning provided the affidavit to Appellant on February 6, 2018. Based upon

- 13 -

the circumstances of the case *sub judice*, Appellant's efforts constituted due diligence in obtaining the affidavit.

Nonetheless, upon receipt of the affidavit, Appellant had one year in which to file a PCRA petition setting forth the newly-discovered fact (the affidavit) as the basis for an exception to the jurisdictional time-bar. **See** 42 Pa.C.S.A. § 9545(b)(3) (stating, "[a]ny petition invoking an exception [to the jurisdictional time-bar] shall be filed within one year of the date the claim could have been presented"). Here, Appellant filed a PCRA petition setting forth the affidavit as a newly-discovered fact on March 7, 2018. This PCRA petition, however, was filed during the pendency of the appeal involving his first PCRA petition.

> Pennsylvania law makes clear the [PCRA] court has no jurisdiction to consider a subsequent PCRA petition while an appeal from the denial of the petitioner's prior PCRA petition in the same case [remains] pending[.] A petitioner must choose either to appeal from the order denying his prior PCRA petition or to file a new PCRA petition; the petitioner cannot do both, *i.e.*, file an appeal and also file a PCRA petition, because prevailing law requires that the subsequent petition must give way to a pending appeal from the order denying a prior petition. In other words, a petitioner who files an appeal from an order denying his prior PCRA petition must withdraw the appeal before he[, or she,] can pursue a subsequent PCRA petition. If the petitioner pursues the pending appeal, then the PCRA court is required [] to dismiss any subsequent PCRA petitions filed while that appeal is pending. Pennsylvania law also states unequivocally that no court has jurisdiction to place serial petitions in repose pending the outcome of an appeal in the same case.

*Commonwealth v. Beatty*, 207 A.3d 957, 961 (Pa. Super. 2019) (citations, quotation marks, and emphasis omitted; paragraph formatting modified), *appeal denied*, 218 A.3d 850 (Pa. 2019).

Upon receipt of the affidavit, Appellant was left with the choice of discontinuing the appeal of his first PCRA petition and filing a subsequent PCRA petition setting forth the affidavit as a newly-discovered fact, or continue with the appeal of his first PCRA petition. Appellant chose to continue with the appeal of his first PCRA petition. Therefore, the PCRA court was without jurisdiction to address the March 7, 2018 PCRA petition and was required to dismiss the PCRA petition. Although the PCRA court did not dismiss Appellant's PCRA petition but, rather, informed Appellant that "[n]o action would be taken on this petition at the moment," the timeliness of a PCRA petition is a jurisdictional prerequisite and we cannot overlook the PCRA court's failure to dismiss Appellant's petition in order to find the PCRA court had jurisdiction to address Appellant's March 2018 petition.[13]

---

[13] Case law is clear that a PCRA court does not have jurisdiction to address a subsequent PCRA petition filed during the pendency of an appeal of a prior PCRA petition where the petitioner chooses to pursue the appeal. *Beatty*, 207 A.3d at 961. A PCRA court is unable to "manufacture" jurisdiction over the subsequent PCRA petition by holding the petition in abeyance. *Id.* (stating, "holding serial petitions in abeyance pending [an] appeal [of a prior petition] in [the] same case perverts [the] PCRA [jurisdictional] timeliness requirements"). While notification that a petition is being held in abeyance is erroneous and misleading to a petitioner, and in particular to a *pro se* petitioner, we cannot overlook this error by a PCRA court and "find" jurisdiction.

The appeal of Appellant's first PCRA petition concluded on June 10, 2019, when our Supreme Court denied Appellant's petition for allowance of appeal. On July 23, 2019, Appellant filed a subsequent PCRA petition, setting forth the affidavit in support of the newly-discovered facts exception to the jurisdiction time-bar. The one year period in which to file such a petition, however, expired on February 7, 2019, one year after Appellant received the affidavit. Therefore, the PCRA court was without jurisdiction to address the underlying claims raised by Appellant, including the **Bradley** ineffectiveness claim raised in Appellant's counseled May 2022 amended PCRA petition, which related back to the July 23, 2019 petition. Consequently, the PCRA court properly dismissed the petition under review, and we are without jurisdiction to address Appellant's claims on appeal.[14]

Order affirmed.

_____

[14] To the extent that Appellant, in his May 2022 amended PCRA petition, asserts that our Supreme Court's decision in **Bradley**, **supra**, constitutes a fact for purposes of the newly-discovered facts exception, we find this assertion to be without merit. **See** Third Amended PCRA Petition, 5/30/22, at 9; **see also Reid**, 235 A.3d at 1147 (reiterating the well-established principal that a judicial decision does not constitute a "fact" for purposes of the newly-discovered facts exception). Moreover, the decision in **Bradley** does not create a new and retroactive constitutional right. **See Commonwealth v. Mead**, 284 A.3d 955, 2022 WL 3755382, at *3 (Pa. Super. 2022 filed Aug. 30, 2022) (unpublished memorandum) (stating, "**Bradley** does not create [an after]-recognized constitutional right and[,] thus, does not involve the PCRA's time[-]bar").

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/31/2023